**File Name: 05a0042n.06**
**Filed: January 13, 2005**
**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 03-6145**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| R U T H E R F O R D   F A R M E R S COOPERATIVE, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| STATE OF TENNESSEE, | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| Intervenor-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MTD CONSUMER GROUP, INC., formerly | ) | |
| known as Cub Cadet Corporation, | ) | |
| | | |
| Defendant-Appellee. | | |

Before:  KEITH, CLAY, and COOK, Circuit Judges.

COOK, Circuit Judge.  Intervenor State of Tennessee appeals a district court decision finding

a Tennessee inventory-repurchasing scheme unconstitutional under the Contract Clause of the

United States Constitution.  Because the inventory-repurchase statutes substantially and retroactively

impaired the preexisting contractual relationship in this case, we find the statutes, as applied, violate

the Contract Clause and affirm the decision of the district court.

I

In 1989, Rutherford Farmers Co-op contracted with MTD (then known as Cub Cadet Corporation) for Rutherford to become a dealer of MTD's lawn and garden power equipment. At that time, the Tennessee statutes did not require MTD to repurchase Rutherford's inventory upon the contract's termination. Some eight years into the contract, however, the State of Tennessee amended its inventory-repurchase statutes, extending their reach to suppliers and retailers of lawn and garden power equipment like Rutherford and MTD. §§ 47-25-1301(1997); 47-25-1302 (1997); 47-25-1303 (1999).[1]

The amended Tennessee law generated this controversy when MTD eventually exercised its contractual right to terminate the agreement with Rutherford. Rutherford sued MTD in Tennessee state court to require MTD to buy back from Rutherford its unsold MTD inventory, as the later-enacted statutes required. MTD removed to federal court, filing a counterclaim seeking a declaratory judgment that the later-enacted repurchase statutes, as applied, violated the Contract Clauses of the U.S. and Tennessee Constitutions. Tennessee then intervened to defend the constitutionality of the statutes.

Reviewing only the federal claim, the district court granted MTD's motion for summary judgment, agreeing with its Contract-Clause claim that the Tennessee repurchase statutes, as applied, substantially and retroactively impaired the Rutherford-MTD contract by imposing an unagreed-to repurchase obligation. Only the State of Tennessee appeals this decision.

---

[1]The Tennessee General Assembly slightly altered—without substantive change for our purpose—the 1997 statutes when it reenacted them in 1999.

II

We review the district court's summary judgment decision de novo, applying Tennessee law[2] to interpret the Rutherford-MTD contract and focusing on Tennessee's main contention that, based on Articles VII(J) and V(F) of the contract, the repurchase statutes failed to impair the contract. The absence of impairment, so the argument goes, ought to have precluded the district court's Contract-Clause analysis. Tennessee's support for this proposition hinges on an inference, a lone New York trial court decision, and a novel reading of the contract, none of which persuade us. We consider each in turn.

Tennessee contends that Article VII(J) of the contract—"If any other state or federal law applies which directly contradicts any provision of this Agreement, said law shall be deemed part of this Agreement"—represented a "clear expression that the contract [would] be amended by subsequent statutory enactments." From the parties' inclusion of Article VII(J) in their contract, Tennessee asks us to infer that because all contracts, as a matter of Tennessee contract law, incorporate existing law, *see Kee v. Shelter Insurance*, 852 S.W.2d 226, 228 (Tenn. 1993), then Article VII(J) must be read to incorporate future law, such as the later-enacted repurchase statutes.

---

[2]Under Tennessee Code Annotated sections 47-25-1312 and 47-18-113, we do not enforce the contract's Ohio choice-of-law provision but instead apply Tennessee law to resolve the constitutional challenge. Both parties also agree on the application of Tennessee law.

We do not draw that conclusion, however, because nothing prevents contracting parties from superfluously referencing or incorporating general contract-law precepts. And Tennessee fails to cite any other provision to bolster its view that Article VII(J)'s redundancy compels the court to interpret that Article to mean something nonredundant.

Generally, Tennessee law instructs us to interpret contractual terms with the same sense and meaning as the parties, "and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." *Victoria Ins. Co. v. Hawkins*, 31 S.W.3d 578, 580 (Tenn. Ct. App. 2000) (citations omitted). Because Article VII(J) does not refer to future laws, that clause, taken in its "plain, ordinary, and popular sense," incorporates only laws existing at the time of contract formation. *Cf. Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 405 (1983) (contract incorporating future laws stated "relevant present and future state and federal laws"). Since the plain meaning fails to support an agreement to be bound by future changes in the law, we will not infer one. 11 Richard A. Lord, *Williston on Contracts* § 30:23 (4th ed. 2004) ("[C]hanges in the law subsequent to the execution of a contract are not deemed to become part of agreement unless its language clearly indicates such to have been intention of parties.").

To further support its incorporation theory, Tennessee directs us to a New York case where a state trial court found a similar contract provision incorporated later-enacted laws. *See Garal Wholesalers, Ltd. v. Miller Brewing Co.*, 751 N.Y.S.2d 679 (N.Y. Sup. Ct. 2002). That case, plainly nonbinding, also includes a significant contractual difference that negates whatever persuasive value it might otherwise have had. That is, the *Garal* parties fully expected certain statutory

amendments at the time of contract formation. *Id.* at 691. So the contract provision actually reflected the *Garal* parties' true intent: incorporation of anticipated statutory amendments. *See id.* (noting that the Contract Clause "protects only expectations of the parties to the contract arising from mutual assent"). Neither Rutherford nor MTD anticipated the repurchase statutes at the time of contract formation. In fact, in light of the 1989 version of the repurchase statutes, which expressly excluded "retailers of yard equipment not primarily engaged in the farm equipment business" from its definition of "retailer," the parties expected the *inapplicability* of the repurchase statutes to their contract. *See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) ("The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles.").

In addition to Tennessee's Article VII(J)-incorporation argument, Tennessee points us to another provision of the Rutherford-MTD contract and argues that because the contract provided for repurchase of certain replacement parts upon termination, that "small sub-set of inventory" reduces the impact of the inventory-repurchase requirement, rendering it so incidental that the contract as a whole is not impaired. Tennessee, however, offers no authority for quantifying impairment in such a manner. Indeed, Article V(F) vitiates Tennessee's theory in that it evidences the parties' contemplation of the subject of repurchase-upon-termination that resulted in a limitation of the obligation to some replacement parts, not all unsold inventory. As such, imposition of an obligation for full inventory repurchase would amount to substantial impairment of the parties' agreed-upon arrangement.

Since we conclude that the contract did not incorporate future statutory amendments, and are not persuaded that Article V(F) renders the contract impairment incidental rather than substantial, we find the application of the repurchase statutes unconstitutional as applied and affirm the district court's decision.