**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0998n.06**
**Filed: December 21, 2005**

**No. 04-6261**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CUMMINGS, MCGOWAN, & WEST, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WIRTGEN AMERICA, INC., a Tennessee | ) | MIDDLE DISTRICT OF TENNESSEE |
| Corporation, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: RYAN, GILMAN, and COOK, Circuit Judges.

COOK, Circuit Judge. Cummings, McGowan, & West ("CMW") sued Wirtgen America for improperly terminating the parties' distributorship agreement (the "Agreement"), pinning its claims on a Tennessee law enacted after the parties entered into their agreement. Because we agree with the district court that applying the later-enacted Tennessee law to the Agreement would violate the Contracts Clause of the Tennessee Constitution, we affirm the district court's dismissal of the suit.[1]

I

---

[1]Our judgment regarding the Tennessee Constitution obviates the need for this court to consider Wirtgen's alternative argument under the United States Constitution.

In 1992, CMW, a construction-equipment retailer, and Wirtgen, a construction-equipment manufacturer, entered into a "Nonexclusive Distributor Agreement." The Agreement authorized CMW to sell Wirtgen products and allowed either party to "terminate this Agreement at any time, with or without cause upon 90 days prior notice." The Agreement also contained a Tennessee choice-of-law clause. Seven years later, Tennessee amended its franchise-agreement laws so as to govern parties such as Wirtgen and CMW, 1999 Tenn. Pub. Acts Ch. 193 (codified at TENN. CODE ANN. §§ 47-25-1301 to -10), directing that "[n]o supplier, directly or through an officer, agent or employee, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a retail agreement without good cause." TENN. CODE ANN. § 47-25-1302 (West 2005). The amendments, specifically made retrospective, further provided that a supplier may not "[c]oerce a retailer into refusing to purchase equipment manufactured by another supplier." *Id.* § 47-25-1304(3). In 2002, Wirtgen supplied ninety-day notice of its intent to terminate the Agreement due to CMW's insistence on selling a competitor's products. CMW sued, alleging Wirtgen violated the 1999 Tennessee law by coercively threatening to terminate the Agreement and by its eventual termination of the Agreement without cause.

The district court granted Wirtgen's motion to dismiss on the ground that the Tennessee Constitution's Contracts Clause prohibited the application of Tennessee's amended law to the Agreement. CMW challenges the district court's decision, arguing that the Tennessee law's application in this case would not contravene Tennessee's Constitution.

II

We review de novo the district court's decision to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003). We view the complaint in the light most favorable to CMW, accept its factual allegations as true, and determine whether CMW can prove any set of facts in support of its claims that would entitle it to relief. *Id.*

The Tennessee Constitution provides that "no retrospective law, or law impairing the obligations of contracts, shall be made." TENN. CONST. art. I, § 20. This section "has uniformly been interpreted to mean that the Legislature may enact laws that have a retrospective application only so long as they do not impair the obligations on contracts or impair vested rights." *Privette v. Keyes*, No. M2000-01635-COA-R10-CV, 2001 WL 196970, at *2 (Tenn. Ct. App. Feb. 28, 2001) (unreported). CMW advances three arguments to support its position that the amended law's restraints on termination may be applied to the Agreement without offending the Contracts Clause of the Tennessee Constitution.[2] First, CMW argues that application of the law to the Agreement would not be "retrospective." Next, CMW contends that the law would not impair Wirtgen's vested

---

[2]CMW filed claims under the amended law for both unlawful coercion and wrongful termination. As counsel for CMW admitted at oral argument, however, the coercion claim rests on Wirtgen's alleged threats to terminate the Agreement. The Agreement expressly recognizes Wirtgen's right to terminate the Agreement, and an implied right to threaten to take this action follows. Thus the coercion claim survives only to the extent that Wirtgen holds no protected contractual right to terminate the Agreement, and we analyze CMW's coercion claim concurrently with its wrongful-termination claim.

rights. Finally, CMW asserts that the Agreement manifests the parties' intent to incorporate changes in Tennessee law into the Agreement.

## A. Retrospective Application

CMW first argues that the amended law's application would not be retrospective because Wirtgen engaged in the prohibited conduct after the amendment took effect. This argument fails because the relevant inquiry is when Wirtgen's contractual rights to undertake its conduct accrued—that is, when the parties *incurred* their contractual obligations—rather than when Wirtgen's *conduct* occurred. For example, in *Bryan v. Leach*, 85 S.W.3d 136 (Tenn. Ct. App. 2001), the parties contracted at the time of their 1992 divorce for the husband to pay the wife alimony. A 1994 legislative enactment provided that alimony would terminate upon the remarriage of the receiving spouse, and when the wife remarried in 1997, the husband sought to end alimony payments. The *Leach* court held the application of the 1994 law to the parties' 1992 contract violated the Tennessee Constitution: "We will not apply [the statute] retroactively to create an automatic termination of contractual obligations undertaken and rights vested prior to its enactment." *Id.* at 144. Similarly, in *Kee v. Shelter Ins.*, the Tennessee Supreme Court held that a statute could not be applied to extend an insurance policyholder's claim-filing deadline where the insurer's contractual rights accrued before the statute was enacted. 852 S.W.2d 226, 229 (Tenn. 1993). In the present case, the parties incurred contractual obligations and accrued contractual rights prior to the enactment of the law, and its application to their contract would be retrospective.

B. Impairment of Rights

CMW next argues that application of the amended law to the Agreement does not impermissibly impair Wirtgen's vested rights. The Tennessee Supreme Court has developed a four-factor analysis for unconstitutional impairment. *See Doe v. Sundquist*, 2 S.W.3d 919, 924 (Tenn. 1999).[3] The first factor—whether the law advances a public interest—lends some, albeit minimal, support to CMW's position. Courts typically "defer to a state's judgment as to the necessity of a measure in question," *Linton v. Comm'r of Health & Env't*, 65 F.3d 508, 519 (6th Cir. 1995), and the law arguably advances the public interest by adjusting suppliers' and distributors' relative bargaining positions and defining their rights. That said, adjustments in bargaining power may serve the public interest when applied prospectively to bargains not yet struck, but create minimal public benefits when applied retrospectively to contracts formed under a prior state of law.

The remaining factors all militate against applying the amended law to the Agreement. The second factor, whether the law defeats the reasonable expectations of the parties, strongly favors Wirtgen. The parties opted for a contract terminable at will by either party rather than including a fixed termination date in the Agreement. The express language of the contract exhibits a reasonable expectation that the amended law would defeat.

---

[3]Although the Tennessee Supreme Court added a fifth consideration in *In re D.A.H.*, 142 S.W.3d 267, 274 (Tenn. 2004), this consideration—whether the right impaired is a fundamental one—does not apply in the present case.

The third factor, whether the law surprises parties who relied on a contrary state of law, also supports Wirtgen's position. Not only did the previous versions of Tennessee Code Annotated §§ 47-25-1301 to -10 not prohibit Wirtgen's termination of the Agreement, but they did not even *apply* to the Agreement. The parties undoubtedly were surprised when, seven years into the ongoing operation of their Agreement, Tennessee amended sections 47-25-1301 to -10 to encompass contracts such as theirs. The final factor, and perhaps the most significant, is the extent to which the law is substantive rather than procedural or remedial. *See, e.g.*, *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976) (permitting retroactive application of a statute that "created no rights and imposed no liabilities . . . [but] merely prescribed a procedure"). Because the Tennessee law goes to the heart of Wirtgen's rights under the agreement—that is, it "gives or defines the right[s]" of the parties rather than defining proceedings by which a right is enforced or providing the means by which relief may be obtained—courts view it as substantive, counseling against its retrospective application. *See Doe*, 2 S.W.3d at 923. Under the four-part test announced in *Doe*, Tennessee's law impermissibly impairs Wirtgen's contractual rights.

## C. Severability Clause

Finally, CMW argues that the Agreement's severability clause, severing any provision from the Agreement that "may be prohibited by law," expresses the parties' intent to incorporate changes in the governing law. But rather than "'clearly indicat[ing] . . . [the] intention of [the] parties'" to incorporate changes in the law, this language merely demonstrates the parties' uncertainty as to

whether the then-governing law prohibited any provision. *Rutherford Farmers Coop. v. MDT Consumer Group, Inc.*, 124 Fed. Appx. 918, 920 (6th Cir. 2005) (quoting 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:23 (4th ed. 2004)) (rejecting a similar argument that the parties' contract incorporated future laws and finding a federal Contracts Clause violation in the application of a related section of the amendment at issue here).

III

Because retrospective application of the Tennessee law to the Agreement violates the Tennessee Constitution by impairing Wirtgen's vested rights, we affirm the district court's dismissal of this suit.