**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0560n.06
Filed: September 15, 2008

**No. 08-5017**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JACK TYLER ENGINEERING CO., INC., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| SPX CORP., d/b/a Waukesha Cherry-Burrell; and | ) | |
| SPX CORP., as successor-in-interest of United | ) | **OPINION** |
| Dominion Co., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GUY, RYAN, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Jack Tyler Engineering Co., Inc. ("JTE") sued several companies, including SPX Corp., over a terminated distributorship agreement. The district court granted summary judgment in favor of the defendants on all of JTE's claims. JTE appeals the judgment on a sole claim: whether the termination of the distributorship agreement violated Tennessee Code § 47-25-1301 et seq. Two panels of this court have already considered and rejected similar claims. Because we agree with the reasoning of those panels, we affirm judgment in favor of SPX Corp.

**I**

In 1993, Waukesha Cherry-Burrell ("Waukesha"), a company now owned and operated by SPX Corp., entered into a distributorship agreement with JTE.[1] The agreement appointed JTE as a non-exclusive distributor of Waukesha automotive-related equipment. The agreement provided that either party may terminate the agreement upon thirty days written notice and that, should no such notice be received by either party, the agreement would continue in effect for subsequent one-year periods. On January 10, 2002, Waukesha notified JTE in writing that it elected to end the distributorship relationship as of January 11, 2002.

JTE sued Waukesha and its parent company in the Western District of Tennessee.[2] In its amended complaint, JTE put forth several claims, including one for violation of Tenn. Code. § 47-25-1301 et seq. On the defendants' motion, the district court granted summary judgment in favor of the defendants. As to the statutory claim, the district court concluded that the 1993 version of that statute applied, rather than the amended 1999 version. The 1993 version was limited to retailers of farm equipment, whereas the 1999 version was broadened to include retailers of other specified equipment. Because JTE did not qualify as a retailer of farm equipment, the district court held that the parties' agreement did not fall within the ambit of the 1993 version of the statute.

---

[1]JTE is a Tennessee corporation, while SPX Corp. is incorporated in and has its principal place of business outside of Tennessee.

[2]JTE also sued Detroit Pump & Manufacturing Co., but has not pursued any appeal as to that defendant.

JTE appealed from the district court's judgment. On appeal, JTE focuses solely on its claim of violation of the Tennessee statute.

## II

### A. Standard of Review

We review de novo the grant of a motion for summary judgment. *F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 642 (6th Cir. 2002). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To survive summary judgment, the non-movant must provide evidence beyond the pleadings "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In reviewing a grant of summary judgment, we draw all justifiable factual inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As this case comes to federal court under diversity jurisdiction, we apply the substantive law of the forum state, in this case Tennessee. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). SPX Corp. contends that application of the amended 1999 version of Tenn. Code § 47-25-1301 et seq. to JTE's claim would violate the Tennessee Constitution's Contracts Clause. In addressing that issue, we first look to the applicable decisions, if any, of the Tennessee Supreme Court to determine whether the statute in question violates the Tennessee Constitution. *Mathis v. Eli Lilly & Co.*, 719 F.2d 134, 141 (6th Cir. 1983). The parties have not identified any Tennessee

Supreme Court decision directly addressing this issue, and our research has likewise found none. Accordingly, we are left "to make [the] best prediction . . . of what the [Tennessee] Supreme Court would do if it were confronted with" the same question of law. *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000) (internal quotation marks omitted).

**B.      The Tennessee Constitution's Contracts Clause**

Article I, section 20 of the Tennessee Constitution provides that "no retrospective law, or law impairing the obligations of contracts, shall be made." Tennessee courts have read this clause to mean, "That no retrospective law which impairs the obligation of contracts, or any other law which impairs their obligation, shall be made." *Hamilton County v. Gerlach*, 140 S.W.2d 1084, 1085 (Tenn. 1940) (citation omitted). Courts have construed this provision as prohibiting laws "which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." *Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn. 1978) (citations omitted). The determination of whether a vested right has been impaired by a retrospective statute involves the consideration of several factors. *Doe v. Sundquist*, 2 S.W.3d 919, 923-24 (Tenn. 1999). Tennessee courts apply the following factors, no one factor being dispositive, to make this determination: (1) whether the public interest is advanced or impeded; (2) the extent to which the retroactive provision gives effect to or defeats the reasonable expectations of affected persons; (3) whether the statute comes as a surprise to persons who have long relied on a contrary state of law; and (4) whether the statute appears to be procedural or remedial. *Id.* at 924.

## C.     The Tennessee Statute

The original focus of the Tennessee statute was narrow.  In 1993 when the parties entered into their agreement, the statute defined a covered "retailer" as:

> any person, firm, or corporation engaged in the business of selling and retailing farm implements, machinery, motorcycles, utility and industrial equipment, attachments, or repair parts, but does not include retailers of petroleum and other motor vehicle and related automotive care and replacement products normally sold by such retailers and does not include retailers of yard and garden equipment not primarily engaged in the farm equipment business.

Tenn. Code § 47-25-1301(5) (1993).  Moreover, covered "inventory" was defined to encompass only farm equipment and related implements. *See id.* § 47-25-1301(3) (1993).  Because the subject of the parties' agreement was automotive-related equipment, not farm-related equipment, there is no dispute that the parties' agreement was not subject to the earlier version of the statute. *See Middle Tenn. Assocs., Inc. v. Leeville Motors, Inc.*, 803 S.W.2d 206, 209 (Tenn. 1991) ("The language of [Tenn. Code § 47-25-1301] makes it clear that the legislature's purpose in enacting the statute was not to protect franchisees in general, but to protect farm equipment dealers in particular.").

In 1999, Tennessee removed the statute's narrow focus on retailers of farm equipment. *See* Tenn. Code § 47-25-1301(3),(4) (1999).  Had the parties entered into the agreement on or after the effective date of the amendments, the agreement would have been subject to the statute (assuming, among other things, that JTE met the other requirements of a covered retailer).  Yet, it is a "well established" principle of Tennessee contract law "that the laws affecting enforcement of a contract, and existing at the time and place of its execution, enter into and form a part of the contract." *Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993); *see also C-Wood Lumber Co., Inc. v. Wayne*

*County Bank*, 233 S.W.3d 263, 282 (Tenn. Ct. App. 2007) ("The rights and obligations of parties

engaged in a commercial transaction are customarily governed by the law in effect when the

transaction[] occurs."). Under this general principle, the agreement incorporated the 1993 version

of the statute (and thus its inapplicability), even though the agreement had been extended without

modification in 1999 and 2000.

JTE counters this principle of contract law by pointing us to the statute's retroactivity

provision, which was also added in 1999. Section 47-25-1312 (1999) states:

> The provisions of this part shall apply to all contracts and shall apply to all retail
> agreements in effect which have no expiration date and are a continuing contract, and
> shall apply to all other contracts entered into, amended, extended, ratified or renewed
> after May 16, 1977. The provisions of this part shall apply to and be binding upon
> all suppliers, all successors in interest or purchasers of assets or stock of suppliers,
> and all receivers, trustees or assignees of suppliers. Any contractual term restricting
> the procedural or substantive rights of a retailer under this part, including a choice of
> law or choice of forum clause, is void.

A straightforward application of this retroactivity provision would bring the parties' 1993 agreement

into the ambit of the amended statute. Thus, the issue on appeal boils down to this: is the amended

statute's retroactivity provision applicable to the 1993 agreement or is the provision, as SPX Corp.

contends, unconstitutional as applied?[3]

Two panels of the court have addressed this question (one under the Tennessee Constitution,

the other under the U.S. Constitution), and both have found the retroactivity provision

---

[3]SPX Corp. raised its constitutionality argument before the district court. Although the district court declined to address it, we can affirm a district court's judgment for a reason other than that considered by that court when the losing party has had an adequate opportunity to respond. *Carver v. Dennis*, 104 F.3d 847, 849 (6th Cir. 1997).

unconstitutional. *See Cummings, McGowan & West, Inc. v. Wirtgen Am., Inc.*, 160 F. App'x 458 (6th Cir. 2005) (unpublished); *Rutherford Farmers Coop. v. MTD Consumer Group, Inc.*, 124 F. App'x 918 (6th Cir. 2005) (unpublished). In *Cummings*, the court considered whether the retroactivity provision of the statute violated the Tennessee Constitution's Contracts Clause. The court considered the four-factor analysis applied by Tennessee courts to determine whether a contractual right had been impaired. On the first factor—whether the law advanced the public interest—the court noted that courts typically defer to a State's judgment and the law arguably advanced the public interest by improving the bargaining power of retailers. *Id.* at 461. However, the court also correctly noted that "adjustments in bargaining power may serve the public interest when applied prospectively to bargains not yet struck, but create minimal public benefits when applied retroactively to contracts formed under a prior state of law." *Id.* On the remaining factors—whether the law gives effect to or defeats the reasonable expectations of affected persons, whether the statute comes as a surprise to affected persons, and whether the statute is procedural or remedial—the court sided against the retailer. *Id.* at 461-62.

In *Rutherford Farmers*, the court addressed whether the retroactivity provision violated the Contract Clause of the U.S. Constitution. That clause prohibits any State from passing "any . . . Law impairing the Obligation of Contracts." U.S. const. art. I § 10, cl. 1. The parties had entered into a retail contract for non-farm equipment in 1989. Given this, the court found that the parties would have expected that the Tennessee statute would be inapplicable to their retail contract. *Rutherford Farmers*, 124 F. App'x at 920-21. The court held that the retroactivity provision was unconstitutional as applied. *Id.* at 921.

Although both decisions are unpublished and therefore not binding precedent, we agree with their reasoning. We do not view a significant change in bargaining power between retailers and suppliers as a clear-cut advancement of the public interest when such a change is applied retroactively. Both retailers and suppliers are commercial entities; both retailers and suppliers are focused primarily on one thing, their own bottom line; and both retailers and suppliers can be expected to negotiate contracts to their own respective advantage. Moreover, we agree with the *Cummings* court that the other three factors strongly militate against applying the 1999 amendments to an earlier contract. The amendments are not strictly procedural or remedial, and applying them to the 1993 agreement would defeat the expectations of the parties, especially those of Waukesha, who bargained for the contract with the reasonable understanding that § 47-25-1301 et seq. would *not* cover the agreement.

JTE tries to distinguish this case from *Cummings* and *Rutherford Farmers* by pointing out that the contracts in those cases were for indefinite periods of duration, whereas the agreement here was subject to, in JTE's words, annual "renewal." The district court held, however, that the parties' agreement was not subject to annual renewal, but rather annual extension. The difference between "renewal" and "extension" is not merely semantic—while a renewal results in a new contract, an extension acts simply as a continuation of the original contract. 17B C.J.S. Contracts § 500 ("Generally an option to renew a contract is the right to require the execution of a new contract while an option to extend the term merely operates to extend the term of the original agreement."). If the agreement was, in fact, renewed after the effective date of the 1999 amendments, then the renewed

agreement would be subject to the amended statute. If not, the agreement would be subject to the 1993 version of the statute.

Contrary to JTE's characterization, the agreement was not renewed. Where, as here, a contract is subject to automatic extension for a definite period of time, under identical terms and conditions, and both parties simply remain silent at the end of the term and continue to perform under the contract, then there is an extension of the contract, not a renewal. *Id.* Therefore, the annual automatic extension of the agreement is not a material difference to distinguish the present case from *Cummings* and *Rutherford Farmers*.

The parties' rights and duties accrued under the agreement when the parties initially executed it in 1993. Given the then-current state of Tenn. Code § 47-25-1301 et seq., the parties could reasonably have expected that the statute did not apply to their agreement. Application of the broader provisions of the amended statute to the parties' agreement would be an unconstitutional impairment of the agreement in violation of the Tennessee Constitution's Contracts Clause.

**III**

Accordingly, for the reasons set forth above, we AFFIRM judgment in favor of SPX Corp.