IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 29, 2017 Session

## ESTATE OF DAVID LYONS v. LaTONY BAUGH ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15-691-I Claudia Bonnyman, Chancellor**

_____

### No. M2017-00094-COA-R3-CV

_____

The parties to a wrongful death action reached a mediated settlement under which the settlement proceeds were divided between the surviving spouse and the deceased's children. After the settlement agreement was judicially approved and the proceeds disbursed, the trial court ruled that the surviving spouse had waived his right to collect any settlement proceeds. The deceased's children filed a legal malpractice action against the estate of the attorney who had represented their guardian ad litem in the wrongful death action because he failed to contest the surviving spouse's standing. As part of the settlement of the legal malpractice action, the children assigned their claims against the surviving spouse to the estate of the attorney. The estate then filed this equitable action against the surviving spouse and his girlfriend, seeking recovery of the settlement proceeds and a constructive trust on any property purchased with those proceeds. Both the estate and the surviving spouse filed cross-motions for summary judgment. The trial court denied the spouse's motion but granted the estate summary judgment based on unjust enrichment. We reverse the grant of summary judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Case Remand

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Patrick D. Witherington, Nashville, Tennessee, for the appellant, LaTony Baugh.

Jason K. Murrie, Nashville, Tennessee, for the appellee, Estate of David Lyons.

# OPINION

## I.

### A.

The facts are largely undisputed.[1]  After the death of Roshanda Baugh, her estranged husband, LaTony Baugh, filed a wrongful death action on behalf of himself as the surviving spouse and Ms. Baugh's four children in the Circuit Court for Davidson County, Tennessee.  The court granted Rachel Welty, guardian ad litem for the deceased's children ("GAL"), permission to intervene in the action to represent the children's interests.[2]  Attorney David Lyons represented the GAL.

James Denzmore, the biological father of the children, also moved to intervene. Mr. Denzmore challenged Mr. Baugh's standing to pursue the wrongful death claim.  He alleged that, at the time of the accident, Mr. Baugh had been estranged from Ms. Baugh for two years and had waived his statutory rights.  Asserting that he had standing as the children's biological father, Mr. Denzmore requested an evidentiary hearing to determine the proper party to pursue the claim.  The court initially determined that Mr. Baugh had priority under the wrongful death statute.  *See* Tenn. Code Ann. § 20-5-106(a) (Supp. 2017).  And, without holding an evidentiary hearing, the court later ruled that Mr. Denzmore lacked standing and dismissed his motion to intervene.  *Baugh v. United Parcel Serv., Inc.*, No. M2012-00197-COA-R3-CV, 2012 WL 6697384, at *3 (Tenn. Ct. App. Dec. 21, 2012).

After the court's ruling, Mr. Denzmore filed both a motion to alter and amend and a motion for permission to file an interlocutory appeal.  While his motions were pending, the other parties reached a mediated settlement.  *Id.* at *3-4.  Mr. Baugh, the GAL, and the defendants in the wrongful death action filed a joint petition for court approval and distribution of the settlement.  In the joint petition, the GAL asserted that the settlement was fair and reasonable and in the best interest of the children.  Mr. Baugh and the GAL also warranted that, "to the best of their belief, they are the proper individuals to bring and resolve this cause of action . . . , that they have the priority right for same, and that they accept full responsibility for any claims made by any individuals, not a party to this matter, to the contrary, including any claim which has been or may be asserted by James Denzmore."  As part of the settlement, Mr. Baugh received 40% of the proceeds with the

---

[1] Except as otherwise indicated, the facts are taken from the parties' statements of undisputed material facts.  *See* Tenn. R. Civ. P. 56.03.

[2] The Davidson County Probate Court appointed Ms. Welty administrator ad litem of the deceased's estate and guardian ad litem for the children.  *Baugh v. United Parcel Serv., Inc.* (*Baugh I*), No. M2012-00197-COA-R3-CV, 2012 WL 6697384, at *1 (Tenn. Ct. App. Dec. 21, 2012).

balance going to the children. The GAL never challenged Mr. Baugh's standing to receive a share of the settlement proceeds.

After careful review of the verified report of the GAL and the settlement terms, the court approved the settlement agreement, including the division of the settlement proceeds between Mr. Baugh and the children. The court expressly found that Mr. Baugh was the "proper individual to bring and resolve this cause of action . . . , that he has the priority for same." The court also found "that this settlement is in the best interest of [the children], under all the circumstances, that same is fair and reasonable, and that, therefore, approval by the Court of this settlement is in the best interest of [the children]."

The court then denied both of Mr. Denzmore's motions. *Id.* at \*4. Mr. Denzmore and the oldest child, who had reached majority, appealed. In the first appeal, we reversed the judgment of the trial court denying Mr. Denzmore's motion for an evidentiary hearing on standing and remanded for a hearing. *Id.* at \*5. We concluded that the resolution of the standing issue "directly impact[ed] the recovery of the children; it [wa]s in their best interest, as well as in accord with the statute, for the court to determine whether Mr. Baugh waived his right to prosecute the action and participate in the distribution of proceeds." *Id.*

On remand, Jermeka Denzmore, the oldest child, replaced Ms. Welty as her siblings' guardian. *Baugh v. United Parcel Serv., Inc.*, No. M2014-00353-COA-R3-CV, 2015 WL 1539593, at \*2 n.1 (Tenn. Ct. App. Mar. 31, 2015). And on October 31, 2013, after an evidentiary hearing, the trial court ruled that

> Ms. Denzmore had proven by a preponderance of the evidence that Plaintiff LaTony Baugh had abandoned Ms. Baugh. Therefore, the Court held that Plaintiff LaTony Baugh did not have standing to institute and/or collect any proceeds from the wrongful death action pursuant to Tenn. Code Ann. § 20-5-106(c).

*Id.* at \*2. The court in the same order prohibited Mr. Baugh from transferring, disposing of, or otherwise encumbering the proceeds or assets received from the wrongful death action. Soon the children would learn that the order came too late.

Ms. Denzmore moved the court to award all of the settlement proceeds to the children. The court denied her request to amend the order approving the settlement. But, to "fullfil[]" the appellate court mandate," the court ordered Mr. Baugh to prepare an accounting of his share of the settlement proceeds and "to pay all proceeds that he has received from the settlement into the Court."

Mr. Baugh's accounting revealed that his share of the proceeds had been spent on a wide variety of items, the most significant being a home on Autumn Ridge Drive, in

3

Nashville, Tennessee. The Autumn Ridge property was titled to Mr. Baugh and Raushanah Hasan, his girlfriend, as joint tenants with common law right of survivorship. The trial court denied Ms. Denzmore's subsequent motion to transfer title to the real property to the children, ruling that Ms. Denzmore failed to establish grounds for imposing a constructive trust.[3]

In the second appeal, Ms. Denzmore challenged the trial court's decision to award attorney's fees out of the settlement proceeds and the denial of her request to transfer title to the Autumn Ridge property. *Id.* at *3. We affirmed both decisions. *Id.* at *8.

The children then filed a legal malpractice action against the Estate of David Lyons in the Circuit Court for Davidson County, Tennessee, based on Mr. Lyons's failure to challenge Mr. Baugh's standing in the wrongful death action. On September 18, 2014, the court approved the settlement of the legal malpractice action. As part of the confidential settlement, the children "agreed to assign to the Estate of David Lyons all of their right, title and interest in any claims and/or causes of action they may possess against LaTony Baugh, Raushanah Hasan, and/or any other person or persons who may have benefitted from LaTony Baugh's receipt of settlement proceeds in the [wrongful death litigation]."

B.

The Estate, as assignee of the children's claims, filed this action in the Chancery Court for Davidson County, Tennessee, against Mr. Baugh and Ms. Hasan,[4] seeking recovery of the settlement proceeds paid to Mr. Baugh and a constructive trust on the Autumn Ridge property and any other property purchased with settlement funds. Mr. Baugh initially filed a motion to dismiss, arguing, among other things, that the Estate's claim was barred by the statute of limitations. The court denied the motion.

---

[3] The trial court found Mr. Baugh had committed no intentional wrongdoing or fraud. As our supreme court recently explained:

> A trial court can impose a constructive trust
>
> against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Coleman v. Olson*, No. M2015-00823-SC-R11-CV, 2018 WL 2996163, at *6-7 (Tenn. June 15, 2018) (quoting *Cent. Bus Lines, Inc. v. Hamilton Nat'l Bank*, 239 S.W.2d 583, 585 (Tenn. Ct. App. 1951)).

[4] The chancery court granted the Estate a default judgment against Ms. Hasan. Ms. Hasan has not appealed the court's order.

4

The Estate then moved for summary judgment based on collateral estoppel. Mr. Baugh opposed the Estate's motion and filed his own cross-motion for summary judgment on grounds of equitable and promissory estoppel, unclean hands, and lack of standing.

On September 2, 2016, the court issued an order denying Mr. Baugh's summary judgment motion, but granting the Estate's motion, although on alternative grounds. The court found that the Estate was entitled to a judgment against Mr. Baugh "under the equitable doctrine of unjust enrichment," for an amount equal to the "amount paid by or on behalf of the [Estate] to the Denzmore children to resolve the legal malpractice action." Following the grant of summary judgment, the Estate voluntarily dismissed its remaining claims. This appeal by Mr. Baugh followed.

## II.

In this appeal, Mr. Baugh argues that the chancery court erred in denying his motion to dismiss based on the statute of limitations. He also contends that the court erred in granting summary judgment in favor of the Estate based on the doctrine of unjust enrichment and in denying his cross-motion for summary judgment.

### A. MOTION TO DISMISS

A statute of limitations defense is appropriately addressed in a motion to dismiss under Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief can be granted. *See Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 638 (Tenn. 2003). A Rule 12.02(6) motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). Making such a determination presents a question of law. Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id.*

Mr. Baugh's motion to dismiss is predicated on the application of the three-year statute of limitations for injuries to personal property. *See* Tenn. Code Ann. § 28-3-105(1) (2017). But we conclude that the applicable statute of limitations is the six-year statute of limitations for actions on contracts. *See id.* § 28-3-109(a)(3).

To determine the applicable statute of limitations, first "a court must ascertain the 'gravamen of the complaint.'" *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 147 (Tenn. 2015) (quoting *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006)). The

gravamen of the complaint is "the 'substantial point,' the 'real purpose,' or the 'object'" of an action. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012) (quoting *Estate of French v. Stratford House*, 333 S.W.3d 546, 557 (Tenn. 2011); *Bland v. Smith*, 277 S.W.2d 377, 379 (Tenn. 1955); and *Bodne v. Austin*, 2 S.W.2d 100, 101 (Tenn. 1928)). In *Benz-Elliott v. Barrett Enterprises, LP*, our supreme court set out a two-part inquiry for ascertaining the gravamen of a claim:

> [A] court must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought. This analysis is necessarily fact-intensive and requires a careful examination of the allegations of the complaint as to each claim for the types of injuries asserted and damages sought.

*Benz-Elliott*, 456 S.W.3d at 151. In carrying out the inquiry, we are not bound by "[t]he designation given those claims by either the plaintiff or the defendant." *Estate of French*, 333 S.W.3d at 557. Determining the gravamen of a complaint or claim presents a question of law. *Redwing*, 363 S.W.3d at 457.

Here, the Estate sought the return of the funds distributed to Mr. Baugh under the settlement agreement and a constructive trust on any property purchased with those funds.[5] The Estate's claim was based on the determination that Mr. Baugh lacked standing to institute and/or collect any proceeds from the wrongful death action, not any fraudulent conduct by Mr. Baugh. The trial court construed the claim as one for unjust enrichment, which is a quasi-contractual theory. *See Metro. Gov't of Nashville & Davidson Cty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005) ("Unjust enrichment is a quasi-contractual theory or an equitable substitute for a contract claim . . . ."). The Estate's description of the payment to Mr. Baugh as "wrongful" and "inappropriate" does not create a tort claim. We conclude the gravamen of the Estate's complaint is an action on a contract.

"Actions on contracts not otherwise expressly provided for" must be filed "within six (6) years after the cause of action accrued." Tenn. Code Ann. § 28-3-109(a)(3). The final order approving the settlement agreement was entered on December 29, 2011. The Estate filed the complaint in this action on June 9, 2015, well within the six-year statute of limitations.

## B. SUMMARY JUDGMENT

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[5] Although it also brought a fraudulent conveyance claim, the Estate voluntarily nonsuited that claim. So our analysis focuses on the only remaining claim.

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). As noted above, both parties moved for summary judgment, supported by statements of undisputed facts. When considering cross-motions for summary judgment, the trial court "must rule on each party's motion on an individual and separate basis." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 83 (Tenn. 2010). For the respective competing motions, the trial court must view the evidence in the light most favorable to the opposing party and draw all reasonable inferences in the opposing party's favor. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The court is not to "weigh" the evidence when evaluating a motion for summary judgment. *Martin*, 271 S.W.3d at 87.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Id.* at 84; *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

1. Scope of the Pleadings

As an initial matter, Mr. Baugh contends that the court erred in granting summary judgment to the Estate because unjust enrichment was not pled. A valid judgment must be based on both the pleadings and the proof. *See John J. Heirigs Const. Co. v. Exide*, 709 S.W.2d 604, 607 (Tenn. Ct. App. 1986). In determining whether a judgment exceeds the scope of the pleadings, we must construe the pleadings liberally "with all reasonable intendments taken in favor of the judgment." *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955).

We conclude that the pleadings included sufficient allegations to put Mr. Baugh on notice of an unjust enrichment claim. *See Webb*, 346 S.W.3d at 426; *see also Brown*, 281 S.W.2d at 497 ("The policy underlying the rule seems to be that since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced."). The Estate alleged that Mr. Baugh had received settlement proceeds that rightfully belonged to the children. And it sought the return of the funds that had been disbursed to Mr. Baugh under the terms of the settlement agreement and the court order. Significantly, in addition to a money judgment, the Estate requested the imposition of a constructive trust on the Autumn Ridge property or any other property acquired with settlement proceeds.[6] A constructive trust is an "equitable

---

[6] The Estate also requested an injunction, requiring "transfer of the [Autumn Ridge property] and

7

device[] used by courts to avoid unjust enrichment." *Story v. Lanier*, 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004); *see Holt v. Holt*, 995 S.W.2d 68, 72 (Tenn. 1999) (explaining that courts impose constructive trusts to avoid unjust enrichment).

2. Unjust Enrichment

Unjust enrichment is a quasi-contract theory under which a court may imply a contractual obligation between parties "where one does not exist." *Metro. Gov't of Nashville & Davidson Cty.*, 195 S.W.3d at 32. "Contracts implied in law or quasi contracts are created by law without the parties' assent and are based upon reason and justice." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005). Our courts will only imply "a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998).

A successful unjust enrichment claim requires proof of three elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware of the benefit; and (3) the defendant accepted the benefit "under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC*, 172 S.W.3d at 525 (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)). The most important element is "that the benefit to the defendant be unjust." *Id.*

Here, the trial court analyzed the unjust enrichment claim as a "direct claim" of the Estate, separate and apart from the claim assigned by the children. We conclude that the trial court erred in finding that the Estate had an unjust enrichment claim against Mr. Baugh. "The underlying principle of the doctrine of unjust enrichment is that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit." *Id.* While Mr. Baugh may have benefitted from Mr. Lyons's failure to contest his standing, Mr. Lyons was not entitled to and did not deserve compensation for that benefit. *See Paschall's, Inc.*, 407 S.W.2d at 156 (remanding for determination of "whether or not the defendant has been so unjustly enriched at the detriment of the complainant so as to require him to make compensation therefor").

Even if we assume that the Estate's unjust enrichment claim is based on the assignment of the children's claim, unjust enrichment is not an appropriate theory for recovery. The trial court found Mr. Baugh had committed no intentional wrongdoing or fraud. Mr. Baugh received no more than the amount agreed to in the court-approved

---

any other assets obtained from the settlement funds."

8

settlement agreement. Our courts will not impose a quasi-contractual obligation when "a valid contract exists on the same subject matter." *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991); *see also Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 480-81 (Tenn. Ct. App. 2016) (concluding that unjust enrichment did not apply when the parties had an enforceable contract covering the same subject matter). Unjust enrichment cannot be used to avoid "an agreement deliberately entered into by the parties, however harsh the provisions of such contract may seem in the light of subsequent happenings." *Jaffe*, 817 S.W.2d at 26 (quoting 17 C.J.S. *Contracts* § 6 (1963)).

We recognize that a court may imply a contractual obligation between parties if the existing contract becomes invalid or unenforceable. *See Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596. And the chancery court determined that the settlement proceeds were paid to Mr. Baugh by mistake. Our supreme court has "explained that a 'mistake' exists in a legal sense when a person, acting on an erroneous conviction of law or fact, executes an instrument that he or she would not have executed but for the erroneous conviction." *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 261 (Tenn. 2010).

The party seeking relief from a contract based on mistake is not entitled to relief if he bears the risk of that mistake. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 152-53 (AM. LAW INST. 1981) (discussing when mistake makes a contract voidable); *see also Gibbs v. Gilleland*, No. M2015-00911-COA-R3-CV, 2016 WL 792418, at \*9-10 (Tenn. Ct. App. Feb. 29, 2016) (holding rescission unavailable for mutual mistake when contract assigned risk to purchaser); *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 554 (Tenn. Ct. App. 1991) (concluding rescission unavailable because "as is" clause allocated risk of loss to plaintiff). As the Restatement (Second) of Contracts explains:

> A party bears the risk of a mistake when
>
> (a) the risk is allocated to him by agreement of the parties, or
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

RESTATEMENT (SECOND) OF CONTRACTS § 154; *see also* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 5 (AM. LAW INST. 2011) (explaining that unjust enrichment was unavailable when the claimant bears the risk of mistake).

We conclude that the settlement agreement is not voidable for mistake because the children, through the GAL, assumed the risk that Mr. Baugh was not entitled to collect any of the settlement proceeds. The GAL agreed to the division of the settlement

proceeds with full knowledge of the controversy surrounding Mr. Baugh's standing.[7] When the GAL petitioned the court to approve and disburse the settlement, Mr. Denzmore's motions challenging Mr. Baugh's standing were still pending. As the Restatement comments make clear,

> Even though the mistaken party did not agree to bear the risk, he may have been aware when he made the contract that his knowledge with respect to the facts to which the mistake relates was limited. If he was not only so aware that his knowledge was limited but undertook to perform in the face of that awareness, he bears the risk of the mistake. It is sometimes said in such a situation that, in a sense, there was not mistake but "conscious ignorance."

RESTATEMENT (SECOND) OF CONTRACTS § 154 cmt. c. Under these circumstances, unjust enrichment does not apply. *See Martin v. Union Planters Corp.*, No. 02A01-9708-CV-00179, 1998 WL 54984, at *5 (Tenn. Ct. App. Feb. 12, 1998) (concluding that unjust enrichment could not be used to ameliorate the harsh effects of a written contract when the claimant had assumed the risk of forfeiture by entering into the contract); *Lakeside Realtors, Inc. v. Ross*, No. 89-311-II, 1990 WL 17212, at *3 (Tenn. Ct. App. Feb. 28, 1990) (concluding that unjust enrichment could not apply because the parties had an express contract and realtor-plaintiff assumed the risk that the property owner might not accept the purchase offer he obtained).

We reverse the trial court's grant of summary judgment to the Estate. Thus, we do not reach the remaining issues raised by Mr. Baugh on appeal.

## III.

We reverse the grant of summary judgment in favor of the Estate; unjust enrichment is inapplicable in this circumstance. Given that the Estate has voluntarily dismissed its remaining claims, the case is remanded to the chancery court for entry of a dismissal and such further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

---

[7] The GAL was well aware of Mr. Baugh's relationship with Ms. Baugh. In her motion to intervene in the wrongful death action, she alleged her intervention was necessary to protect the children's interest because of Mr. Baugh's estrangement from the deceased. *Baugh I*, 2012 WL 6697384, at *2. She supported her claim with a factual affidavit from a family friend. *Id.* In his quest for a hearing on Mr. Baugh's standing, Mr. Denzmore presented similar facts in both pleadings and affidavits. *Id.* at *3-4.