IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

September 27, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

Filed:  September 27, 1999

| | | |
|---|---|---|
| PROMISE DOE,  ET AL., | ) | |
| | ) | |
| Appellees, | ) | DAVIDSON CIRCUIT |
| | ) | |
| Vs. | ) | |
| | ) | |
| | ) | HON. WALTER KURTZ, |
| | ) | JUDGE |
| DONALD SUNDQUIST, ET AL., | ) | |
| | ) | |
| Appellants. | ) | No. 01-S-01-9901-CV-00006 |

**For Appellants:**

Paul G. Summers
Attorney General and Reporter

Michael E. Moore
Solicitor General

Dianne Stamey Dycus
Deputy Attorney General
Nashville, Tennessee

**For Appellees:**

Larry L. Crain
AMERICAN CENTER
FOR LAW AND JUSTICE
Brentwood, Tennessee

Kevin H. Theriot
AMERICAN CENTER
FOR LAW AND JUSTICE
Panama City Beach, Florida

**For Amici Curiae,
Teresa Evetts Horton, et al.:**

Frederick F. Greenman, Jr.
DEUTSCH, KLAGSBRUN & BLASBAND
New York, New York

Robert D. Tuke
TUKE, YOPP & SWEENEY
Nashville, Tennessee

Harlan Dodson, III
Anne C. Martin
Julie K. Sandine
DODSON, PARKER & BEHM
Nashville, Tennessee

# O P I N I O N

COURT OF APPEALS REVERSED;
TRIAL COURT'S JUDGMENT REINSTATED.                    ANDERSON, C.J.

We granted this appeal to decide whether legislation[1] allowing disclosure of sealed adoption records to adopted persons over the age of 21 impairs the vested rights of birth parents who surrendered children under the prior law and thus constitutes retrospective legislation in violation of article I, section 20 of the Tennessee Constitution. We also have considered whether the legislation violates the right to privacy under the Tennessee Constitution.

The trial court dismissed the plaintiffs' action for injunctive and declaratory relief, holding that the legislation did not impair the plaintiffs' vested rights or their rights to privacy under the Tennessee Constitution. The Court of Appeals reversed the trial court's judgment, concluding that the retrospective application of the legislation impaired the vested rights of birth parents who surrendered children under former law with an expectation that records of the adoption would not be released.

We agree with the trial court that retrospective application of legislation allowing disclosure of adoption records to adopted persons over the age of 21 does not impair the vested rights of birth parents in violation of article I, section 20 of the Tennessee Constitution, nor does it violate the right to privacy embraced in the Tennessee Constitution. We therefore reverse the Court of Appeals' judgment and reinstate the judgment of the trial court.

## BACKGROUND

In 1995, the Tennessee Legislature enacted several new statutory provisions and amendments regarding the law of adoption. See 1995 Tenn. Pub. Acts, ch. 523 (codified at Tenn. Code Ann. §§ 36-1-101, et seq. (1996 & Supp. 1998)). Section 36-1-127(c) of the new law, which became effective July 1, 1996, provides in relevant part:

> (1)(A) All adoption records . . . shall be made available to the following eligible persons: (i) [a]n adopted person . . . who is twenty-one (21) years of age or older . . .; (ii) [t]he legal representative of [such] a person . . .;

---

[1] 1995 Tenn. Pub. Acts, ch. 523 (codified at Tenn. Code Ann. §§ 36-1-101, et seq. (1996 & Supp. 1998)).

-2-

(B) Information . . . shall be released . . . only to the parents, siblings, lineal descendants, or lineal ancestors, of the adopted person . . ., and only with the express written consent . . . [of] the adopted person . . . .

Id. The new law also provides for a "contact veto," under which a parent, sibling, spouse, lineal ancestor, or lineal descendant may register to prevent contact by the adopted person. Tenn. Code Ann. § 36-1-128 (1996 & Supp. 1998).

In March of 1997, a group of plaintiffs filed an action in Davidson County for declaratory and injunctive relief, challenging the constitutionality of the disclosure portion of the new law.[2] Plaintiff Promise Doe alleged that she was a birth parent who surrendered a child for adoption in 1990 with the assurance that the information she provided would remain confidential and sealed and could not be accessed by the child or the child's father. Plaintiff Jane Roe, a birth parent who surrendered a child for adoption in 1956, alleged that she had signed some papers after giving birth but was advised that the child had died. Roe also alleged that she was contacted by the Tennessee Department of Human Services in 1988 regarding her biological child's requests for identifying information.[3]

The plaintiffs argued that they had a vested right in the confidentiality of their identity under the law in effect at the time they surrendered children for adoption and that retrospective application of the 1995 statute violates article I, section 20 of the Tennessee Constitution. The plaintiffs also argued that the legislation interfered with their right to privacy, specifically, familial and procreational privacy and the non-disclosure of personal information.

After initially granting a temporary restraining order that prevented disclosure of the records, the trial court denied the plaintiffs' request for a temporary injunction. The

_____

[2] The plaintiffs also sought relief in federal court but were unsuccessful. Doe v. Sundquist, 943 F. Supp. 886 (M.D. Tenn. 1996), aff'd, 106 F.3d 702 (6th Cir. 1997), cert. denied, ___ U.S. ___, 118 S. Ct. 51, 139 L. Ed. 2d 16 (1997).

[3] Plaintiffs also included Kimberly C. and Russ C., adoptive parents, and Small World Ministries, Inc., a non-profit child-placing agency. These plaintiffs have not challenged the Court of Appeals' ruling, which was specifically limited to the plaintiffs who were birth parents.

trial court concluded (a) that the plaintiffs failed to establish they had a vested right to confidential records under prior law that would invalidate the new law as retrospective legislation under article I, section 20 of the Tennessee Constitution, and (b) that the plaintiffs failed to establish that disclosure violated the right to privacy under the Tennessee Constitution. For these same reasons, the trial court later granted the State's motion to dismiss the action.

The Court of Appeals issued a stay pending disposition of the appeal.[4] The court then concluded that the statute in question violated article I, section 20 for the following reasons:

> [W]e find that the retrospective application of Section 36-1-127(c) does impair the vested rights of birth parents who surrendered their children for adoption under former law. Under the prior law, these birth parents had a reasonable expectation that any identifying information would remain confidential if they so desired. . . . [T]he DHS regulation mandating that birth parents be assured of the confidential aspects of the adoption-related services . . . adopted in 1988 . . . is indicative of the expectation of confidentiality prevalent under the prior law. The birth mother plaintiffs all proclaim that they were assured confidentiality and expected the same under that law. We find that this interest in the confidentiality of identifying information is a proper interest for the state to recognize and protect. Life-changing decisions were made based upon this expectation and to now deprive those who relied upon their legitimate expectation under the law would be to deprive them of a vested right.

The Court of Appeals specifically limited its holding to the plaintiffs who were birth parents. We granted review to consider this important issue of first impression.

## ANALYSIS

### Standard of Review

This case is on appeal from the trial court's dismissal of the plaintiffs' suit for failure to state a claim upon which relief can be granted. Tenn. R. Civ. P. 12.02(6). A Rule 12.02(6) motion tests the legal sufficiency of the plaintiff's complaint and not the strength of the plaintiff's evidence. Riggs v. Burson, 941 S.W.2d 44, 47 (Tenn. 1997).

---

[4] The court initially granted extraordinary review of the temporary injunction issue and granted a stay of the proceedings. The trial court dismissed the suit and entered judgment, notwithstanding the Court of Appeals' stay order. The Court of Appeals thereafter consolidated the appeals.

In ruling on such a motion, courts must construe the complaint in favor of the plaintiff, accept the allegations of fact as true, and deny the motion unless it appears that the plaintiff can establish no facts supporting the claim that would warrant relief. Id. When the trial court's grant of a Rule 12.02(6) motion to dismiss is appealed, we must take the factual allegations contained in the complaint as true and review the lower courts' legal conclusions de novo without a presumption of correctness. Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997).

## History of Adoption Statutes in Tennessee

We begin by reviewing the history of adoption laws in Tennessee. In 1852, the General Assembly granted jurisdiction to circuit and county courts authorizing the adoption of children; the function of the court was to record the names of the parties and the terms of the adoption. 1852 Tenn. Pub. Acts, ch. 338. In 1917, the legislature determined that in cases involving children whose parentage was unknown, and who had not been assigned by court order to a child-caring organization, a trial judge had the discretion to "require that all papers relating to the personal history of such child or family history if any is of record, be sealed and filed in the county archives, to be unsealed only by judicial order." 1917 Tenn. Pub. Acts, ch. 120.

Later amendments provided that records were to be sealed but could be disclosed in the discretion of the court. In 1949, for instance, legislation provided that an adopted person over the age of 21 could petition the trial judge to review the records and to release any information the judge determined was in the best interest of the adopted person and the State of Tennessee. 1949 Tenn. Pub. Acts, ch. 127. Similarly, the statute was amended in 1951 to require an adopted individual seeking information to file a court order; disclosure required the court to find that releasing the records was in the best interest of the adopted person and the public. 1951 Tenn. Pub. Acts, ch. 202.

Other amendments created more inroads into the confidentiality provisions of the adoption statutes. In 1982, an amendment allowed an adopted person to file a written request and to receive non-identifying information from the Department of Human Services about the adopted person's biological family. 1982 Tenn. Pub. Acts, ch. 668. In 1985, an amendment provided for further disclosure of records if DHS received consent from the biological parents. 1985 Tenn. Pub. Acts, ch. 285. In 1989, an amendment provided that upon a written request of an adopted person over age 21, DHS was to search its records for information concerning the location of the birth parent(s) and, if found, request consent for disclosure of the information. If the birth parent consented, DHS was to provide the adopted person with the name, address, and identifying information of the birth parent. 1989 Tenn. Pub. Acts, ch. 507.

As previously noted, the 1995 amendments mandate disclosure of records upon the request of an adopted person over the age of 21 without requiring a court order or consent of the biological parents. Tenn. Code Ann. § 36-1-127(c)(1). Other portions of the legislation, however, establish a procedure by which a birth parent or related individual can "veto" any contact with the adopted party who has received the records. Tenn. Code Ann. § 36-1-128 (1996 & Supp. 1998). We will now address the constitutionality of these disclosure provisions.

**Retrospective Legislation**

Article I, section 20 of the Tennessee Constitution provides that "no retrospective law, or law impairing the obligations of contracts, shall be made." We have construed this provision as prohibiting laws "which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." Morris v. Gross, 572 S.W.2d 902, 907 (Tenn. 1978). A "vested right," although difficult to define with precision, is one "which it is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice." Id. at 905 (citation omitted).

-6-

In considering whether a statute impairs a vested right under article I, section 20, we frequently have observed that statutes which are procedural or remedial in nature may be applied retrospectively. Saylors v. Riggsbee, 544 S.W.2d 609, 610 (Tenn. 1976). In general, a statute is procedural "if it defines the . . . proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right." Kuykendall v. Wheeler, 890 S.W.2d 785, 787 (Tenn. 1994) (citation omitted). A statute is remedial if it provides the means by which a cause of action may be effectuated, wrongs addressed, and relief obtained. Dowlen v. Fitch, 196 Tenn. 206, 211-12, 264 S.W.2d 824, 826 (1954). We have clarified, however, that even a procedural or remedial statute may not be applied retrospectively if it impairs a vested right or contractual obligation in violation of article I, section 20. Kee v. Shelter Ins., 852 S.W.2d 226, 228 (Tenn. 1993).

Our case law indicates that deciding whether a "vested right" exists and has been impaired by retrospective application of a statute entails consideration of many factors, none of which is dispositive. E.g., Morris, 572 S.W.2d at 907 (focusing on plaintiff's "vested right" to maintain an already filed cause of action despite new law that effectively dismissed the suit and prevented its refiling due to a shorter statute of limitations); Saylors, 544 S.W.2d at 610 (analyzing the substantive/procedural distinction in determining whether a statute impaired a vested right or contractual obligation); Ford Motor Co. v. Moulton, 511 S.W.2d 690, 695-97 (Tenn. 1974) (analyzing whether legislation deprived a person of his reasonable expectations under the prior law). In short, there is no precise formula to apply in making this determination.

We therefore agree with the trial court that it is useful to employ a multi-factor analysis, such as that enunciated in Ficarra v. Department of Regulatory Agencies, 849 P.2d 6 (Colo. 1993):

> [I]n determining whether a retroactive statute impairs or destroys vested rights, the most important inquiries are (1) whether the public interest is advanced or retarded, (2) whether the retroactive provision gives effect to or defeats the bona fide intentions or reasonable expectations of affected

persons, and (3) whether the statute surprises persons who have long relied on a contrary state of the law.

Id. at 16 (alteration in original) (citation omitted). We add to these factors, which encompass the principles discussed in our case law, an additional factor discussed above: the extent to which a statute appears to be procedural or remedial. E.g., Kuykendall, 890 S.W.2d at 787.

In considering the first factor, we observe that the stated primary purpose of the new law reflects consideration of the public interest:

> [t]he primary purpose of this part is to provide means and procedures for the adoption of children and adults that recognize and effectuate to the greatest extent possible the rights and interests of persons affected by adoption, especially those of the adopted persons, which are specifically protected by the constitutions of the United States and the state of Tennessee . . . .

Tenn. Code Ann. § 36-1-101(a) (1996 & Supp. 1998). Moreover, with regard to the disclosure of records, the statute expressly provides:

> [t]he purpose of this part shall also be to favor the rights of adopted persons or other persons for whom any closed records are maintained and their families to obtain information concerning the lives of those persons and to permit them to obtain information about themselves from the adoption records, sealed records, sealed adoption records, or post-adoption records to which they are entitled, but also to recognize the rights of parents and adopted persons not to be contacted by the persons who obtain such information, except in compliance with this part.

Tenn. Code Ann. § 36-1-101(c) (emphasis added). The legislation in question is obviously related to achieving these legitimate goals, which the General Assembly has found to be in the public interest.

The second and third factors – the intentions or reasonable expectations of affected persons, and the surprise to persons who had relied on a contrary state of the law -- are obviously related to some degree. The Court of Appeals' decision largely focused on its conclusion that the birth parents had a reasonable expectation of confidentiality based on the law as it existed when they surrendered their children for

adoption.  In our view, the Court of Appeals' analysis is flawed because it does not fully take into account the history of adoption laws in this State.

Early adoption statutes did not require either that records be sealed or that the identity of the parties remain confidential.  Later amendments to the statutes provided that even if sealed, records could be disclosed upon a request by an adopted person and a judicial finding that disclosure was in the best interest of the adopted person and the public.  Still other amendments enacted in 1982 and 1985 permitted disclosure of information under certain circumstances even without a judicial finding.  There simply has never been an absolute guarantee or even a reasonable expectation by the birth parent or any other party that adoption records were permanently sealed.  In fact, reviewing the history of adoption statutes in this state reveals just the opposite.  Accordingly, we disagree with the Court of Appeals' conclusion that the plaintiffs had a vested right in the confidentiality of records concerning their cases with no possibility of disclosure.[5]  Cf. Moulton, 511 S.W.2d at 695-97 (finding that reasonable expectation under prior law was impaired by retroactive application of statute reviving an otherwise barred cause of action).

Finally, we conclude that the 1995 amendments are both procedural and remedial.  Under former statutes, disclosure of records required a judicial determination that disclosure was in the best interest of the adopted person and the public.  Upon such a determination, there was no requirement that the birth parents or other individuals be notified or have the option to register a "veto" preventing contact.  The new law, on the other hand, reflects the legislature's view that the disclosure of records is in the best interest of the adopted person and the public.  It mandates disclosure of records if requested by an adopted person 21 years of age or older, yet, unlike prior law, balances disclosure by allowing a "veto" that prevents contact with the adopted person.  Tenn. Code Ann. § 36-1-130 (1996).  It does not create new rights or

---

[5] Similarly, given this statutory history, we also disagree with the Court of Appeals' conclusion that the plaintiffs could reasonably rely on an alleged assurance of confidentiality from either a state agency or state regulation.

allow access to any records that previously were not to be released. In sum, we believe that these new methods and standards for disclosure are procedural in nature and reflect the legislature's effort to create legislation that advances the best interest of adopted persons and the public.

Accordingly, we have considered the public interest advanced by the 1995 legislation, the reasonable expectations of persons affected by the legislation, the surprise to persons relying on the statutory provisions in effect prior to the effective date of this legislation, and the extent to which the new law is procedural or remedial in nature. We conclude that retrospective application of the legislation now codified in Tenn. Code Ann. § 36-1-127(c) does not impair the vested rights of the plaintiffs in violation of article I, section 20 of the Tennessee Constitution.

## Right to Privacy

The plaintiffs assert that disclosure pursuant to Tenn. Code Ann. § 36-1-127(c) violates their right to privacy under article I, sections 1, 3, and 20, and article XI, section 8 of the Tennessee Constitution. They allege that the statute invades the rights of familial and procreational privacy, as well as the right to non-disclosure of personal information.

In Davis v. Davis, 842 S.W.2d 588 (Tenn. 1992), we recognized that, although a right to privacy is not mentioned in either the federal or Tennessee Constitutions, "there can be little doubt about its grounding in the concept of liberty reflected in those two documents." Id. at 598. We observed that "the notion of individual liberty is . . . deeply embedded in the Tennessee Constitution" and concluded "that there is a right of individual privacy guaranteed under and protected by the liberty clauses of the Tennessee Declaration of Rights." Id. at 599, 600. Although Tennessee's right of privacy incorporates some of the features of the right to privacy under the federal constitution, we are free to extend greater protection in applying our own state constitution. Id. at 600.

-10-

As the plaintiffs argue, and the State concedes, the right to privacy under the Tennessee Constitution includes the right of procreation. Id. The right to privacy also encompasses "the right of parents to care for their children without unwarranted state intervention." Hawk v. Hawk, 855 S.W.2d 573, 579 (Tenn. 1993). These rights under our state constitution are likewise reflected in the United States Constitution. E.g., Bellotti v. Baird, 443 U.S. 622, 634, 99 S. Ct. 3035, 3043, 61 L. Ed. 2d 797 (1979); Roe v. Wade, 410 U.S. 113, 152, 93 S. Ct. 705, 726, 35 L. Ed. 2d 147 (1973).

The plaintiffs argue that disclosure of adoption records invades the rights to familial privacy by impeding a birth parent's freedom to determine whether to raise a family and disrupting both biological and adoptive families by releasing identifying information previously sealed. We disagree.

The disclosure provisions reflect the legislature's determination that allowing limited access to adoption records is in the best interest of both adopted persons and the public. The provisions do not, however, allow unfettered access in disregard of the sensitivities and privacy interests involved. To the contrary, disclosure is limited to an adopted individual or that individual's legal representative, 21 years of age or older. Moreover, extensive provisions are included to allow a birth parent or other related individual to register a "contact veto" and eliminate or reduce the risk that disclosure of identifying information will have a disruptive effect upon the lives of the biological and adoptive families.[6] Similarly, the plaintiffs' disruption argument is dubious in that it is predicated upon a speculative risk of disruption that may or may not occur a minimum of 21 years after the adoption occurs. In short, the statute does not impede traditional familial privacy rights such as marrying, having children, or raising children.

The plaintiffs also argue that disclosure impedes the right to procreational privacy by impeding the birth parents' decision of whether to carry a child to term. We again disagree.

---

[6] The contact veto provisions are strengthened and enforced by both criminal sanctions and civil remedies. Tenn. Code Ann. § 36-1-132 (1996 & Supp. 1998).

The decision of whether to carry a pregnancy to term implicates privacy rights under the federal and state constitutions. Davis, 842 S.W.2d at 601. This decision differs fundamentally from the decision of whether to surrender a child for adoption. The right of adoption is statutory. It was created to protect the interests of children whose parents are unable or unwilling to provide for their care, Young v. Smith, 191 Tenn. 25, 33, 231 S.W.2d 365, 369 (1950), and not to advance a procreational right to privacy of the biological parent. Although the prospect of having the records of the adoption released to the child 21 years later may have some bearing on the decision, it is far too speculative to conclude that it interferes with the right to procreational privacy. Moreover, the prospect of disclosure under the legislation at issue in this case is nothing new; as already discussed, disclosure has long been permitted in some form under Tennessee statutory law.

Finally, the plaintiffs contend that disclosure violates a privacy right to non-disclosure of personal information. We have held, however, that the confidentiality of records is a statutory matter left to the legislature. E.g., Tennessean v. Electric Power Bd. of Nashville, 979 S.W.2d 297, 300-01 (Tenn. 1998); see also Thompson v. Reynolds, 858 S.W.2d 328 (Tenn. Ct. App. 1993). Absent a fundamental right or other compelling reason, we reject the invitation to extend constitutional protection to the non-disclosure of personal information.[7]

### CONCLUSION

We conclude that the disclosure of adoption records as provided in 1995 Tenn. Pub. Acts, ch. 523, codified at Tenn. Code Ann. § 36-1-127(c), does not impair the plaintiffs' vested rights in violation of article I, section 20 of the Tennessee Constitution and does not violate the plaintiffs' right to privacy under the Tennessee Constitution. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court. The stay granted by the Court of Appeals prohibiting the

---

[7] The Sixth Circuit has likewise concluded on several occasions that there is no constitutional right to the non-disclosure of personal information. Jarvis v. Wellman, 52 F.3d 125, 126 (6th Cir. 1995); Doe v. Wigginton, 21 F.3d 733, 740 (6th Cir. 1994); J. P. v. DeSanti, 653 F.2d 1080, 1090 (6th Cir. 1981).

release of adoption records under the provisions of Tenn. Code Ann. § 36-1-127(c) is lifted.

Costs of appeal are taxed to the appellees, for which execution shall issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE


**CONCUR:**

Drowota, Birch, Holder, and Barker, JJ.