IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 2, 2021 Session

## JAMES KEITH EUDALEY v. U.S. BANK NATIONAL ASSOCIATION

**Appeal from the Circuit Court for Davidson County**
**No. 20C1556  Amanda Jane McClendon, Judge**
_____

### No. M2021-00344-COA-R3-CV
_____

A loan was secured by a deed of trust on the borrower's real property.  When the borrower repaid the loan in full, the bank paid a fee to record a deed of release.  The bank then sought reimbursement of the fee from the borrower.  The borrower filed a putative class action suit, alleging that Tennessee law prohibited the bank from seeking reimbursement of the recording fee.  The trial court dismissed the complaint, concluding that federal regulations preempted the borrower's claims.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Pat Montgomery Barrett, III, Nashville, Tennessee, and Tiffany N. Ray, Mobile, Alabama for the appellant, James Keith Eudaley.

C.E. Hunter Brush, Nashville, Tennessee, and Thomas J. Cunningham, West Palm Beach, Florida, for the appellee, U.S. Bank National Association.

## OPINION

### I.

When James Keith Eudaley borrowed money from U.S. Bank National Association, he signed a deed of trust to his real property as security for the loan.  After Mr. Eudaley paid off the loan, U.S. Bank recorded a deed of release with the Dickson County Register of Deeds, paying a $12 recording fee.  The bank then sought reimbursement of the fee from Mr. Eudaley.

In response, Mr. Eudaley filed a putative class action complaint against U.S. Bank. He alleged that a state statute prohibits U.S. Bank from passing along the cost of recording a release to borrowers. Specifically, Mr. Eudaley claimed that the bank's conduct constituted negligence per se and unjust enrichment.

U.S. Bank moved to dismiss the complaint. It argued that the state statute did not prohibit reimbursement of recordation fees; Mr. Eudaley's claims were preempted by the National Bank Act and its implementing regulations; Mr. Eudaley failed to give pre-suit notice as required by the parties' contract; and Mr. Eudaley failed to state a claim for either negligence per se or unjust enrichment.

The trial court granted U.S. Bank's motion to dismiss. It concluded that the state statute cited by Mr. Eudaley prohibited lienholders like U.S. Bank from seeking reimbursement for recordation fees. But it also found that the National Bank Act's implementing regulations preempted Mr. Eudaley's claims. Specifically, the regulations permitted national banks to charge "customers non-interest charges and fees." 12 C.F.R. § 7.4002(b)(2) (2022). So the state statute was "in irreconcilable conflict" with federal law.

## II.

A motion to dismiss for failure to state a claim "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The "court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). The complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). Making such a determination presents a question of law. *Id.* So our review is "de novo without a presumption of correctness." *Id.*

In considering Mr. Eudaley's appeal, we must answer two separate questions. Does Tennessee Code Annotated § 66-25-106[1] prohibit a debt holder from seeking reimbursement for costs associated with the recording of a release? And, if so, does federal law preempt that prohibition when the debt holder seeking reimbursement is a national bank?

---

[1] When the case was filed, the relevant statute was found at Tennessee Code Annotated § 66-25-115. The Tennessee Code Commission has since re-designated the statute as Tennessee Code Annotated § 66-25-106. So we refer to the statute using the re-designated section number.

A.

In interpreting a statute, our goal is to "give effect to the intention or purpose of the legislature as expressed in the statute." *Metro. Gov't of Nashville & Davidson Cnty. v. Motel Sys., Inc.*, 525 S.W.2d 840, 841 (Tenn. 1975). We read the words of a statute "in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). When a statute's text is unambiguous, we derive legislative intent from the plain and ordinary meaning of the statutory language. *New v. Dumitrache*, 604 S.W.3d 1, 14 (Tenn. 2020); *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014). We only look beyond the statute if the plain language of the text does not resolve the question before us. *Thurmond*, 433 S.W.3d at 517; *Lee Med. v. Beecher*, 312 S.W.3d 515, 528 (Tenn. 2010).

Tennessee Code Annotated § 66-25-106 provides that "[a]ll costs . . . for registering a formal release[] shall be paid by the holder of the debt secured by the . . . deed of trust." Tenn. Code Ann. § 66-25-106 (2022). The parties here disagree about the meaning of the phrase, "shall be paid by the holder of the debt." *Id.* Mr. Eudaley argues that the statute requires holders of debt to pay all costs associated with recording a deed of release. So they cannot pass those costs on to others. U.S. Bank concedes that the statute requires holders of debt to pay the costs of recording. But it argues that the statute does not bar the bank from seeking reimbursement of those costs from the borrower.

Both parties offer the language of other statutes to support their interpretations. Mr. Eudaley points to statutes that use the word "remit" instead of "paid." *See* Tenn. Code Ann. §§ 12-3-306 (2019)*,* 68-221-211 (2013). He argues that the word "remit" requires only a transfer of money. But the word "paid" requires bearing the burden of the payment. U.S. Bank points to a different statute that uses the word "borne" instead of "paid." *See id.* § 69-5-815 (2019). The bank argues that a command to "pay" a cost permits reimbursement. But a command to "bear" a cost does not.

Contrary to the parties' arguments, the plain and ordinary meaning of the word "paid" does not resolve the question of whether the statute prohibits holders of debt from seeking reimbursement. So we consider the broader statutory scheme. *See Thurmond*, 433 S.W.3d at 517. Chapter 25 of Title 66 of the Tennessee Code addresses the release of liens created by written instruments filed of record. *See generally* Tenn. Code Ann. §§ 66-25-101 to -215 (2022). It requires "a formal deed of release" when a debt "has been fully paid or satisfied." *Id.* § 66-25-101(a). And it provides for fees and penalties against the holder of the debt for "fail[ure] to enter a proper release of record" after written demand from the party making payment. *Id.* § 66-25-102(a).

Given this context, we conclude that Tennessee Code Annotated § 66-25-106 prohibits holders of debt from seeking reimbursement of costs associated with recording a

3

release of a deed of trust. The debt holder's obligation to record a release only arises if the debt has been paid in full or satisfied, indicating that nothing further is owed to the debt holder.[2]

B.

Having determined that Tennessee Code Annotated § 66-25-106 prohibits a debt holder from seeking reimbursement for costs associated with the recording of a release, we consider the impact of federal law. U.S. Bank, which is a nationally chartered bank, argues that the prohibition is preempted by the National Bank Act and regulations promulgated by the Office of the Comptroller of the Currency ("OCC"). The Supremacy Clause of the United States Constitution provides that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Thus, federal law "may preempt an otherwise valid state law, rendering it without effect." *Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 55 (Tenn. 2013).

We usually presume that valid state laws are not "displaced by a federal statute unless that is the clear and manifest intent of Congress." *PHI Air Med., LLC v. Corizon, Inc.*, 628 S.W.3d 460, 466 (Tenn. Ct. App. 2021) (quoting *Pendleton v. Mills*, 73 S.W.3d 115, 126 (Tenn. Ct. App. 2001)). But that presumption does not apply in the context of national banking because banking is "an area where there has been a history of significant federal presence." *Monroe Retail, Inc. v. RBS Citizens, N.A.¸* 589 F.3d 274, 280 (6th Cir. 2009) (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)).

U.S. Bank was created under the National Bank Act, which vests the bank with authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). The National Bank Act does not expressly preempt state law. *See* 12 U.S.C. § 25b(b); *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). Nor does it occupy the entire field of bank regulation. *See Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 529 (2009) ("No one denies that the National Bank Act leaves in place some state substantive laws affecting banks."); *Monroe Retail*, 589 F.3d at 283. Instead, "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the [National Bank Act]." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007); *see also Cadence Bank, N.A. v. The Alpha Trust*, 473 S.W.3d 756, 766 (Tenn. Ct. App. 2015). But state laws may not "prevent or significantly interfere with [a] national bank's exercise of its powers." *Barnett*, 517 U.S. at 33. And "[t]he level of 'interference' that gives rise to preemption under the [National Bank Act] is not very high." *Monroe Retail, Inc.*, 589 F.3d at 283.

---

[2] We are not alone in this interpretation of the statute. *See* R. Wilson Freyermuth, *Why Mortgagors Can't Get No Satisfaction*, 72 MO. L. REV. 1159, 1168 n.24 (2007) (citing the Tennessee statute as "obligat[ing] the mortgagee to provide a mortgage satisfaction without charge").

The OCC "is charged with the enforcement of the [national] banking laws." *Inv. Co. Inst. v. Camp*, 401 U.S. 617, 627 (1971); 12 U.S.C. § 1. Regulations promulgated by the OCC further "define the 'incidental powers' of national banks beyond those specifically enumerated in the statute." *Martinez v. Wells Fargo Home Mortg. Inc.*, 598 F.3d 549, 555 (9th Cir. 2010). And the regulations possess the same preemptive effect as the National Bank Act itself. *See Conf. of State Bank Supervisors v. Conover*, 710 F.2d 878, 885 (D.C. Cir. 1983); 12 C.F.R. § 7.4002(d) ("The OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section.").

Part 7 of the OCC regulations identifies the authorized activities and operations of national banks. Subpart D of Part 7 is entitled "Preemption." *See* 12 C.F.R. §§ 7.4000-7.4010 (2022). That subpart authorizes a national bank to "charge its customers non-interest charges and fees." *Id.* § 7.4002(a). The "establishment" and "method of calculating" such charges and fees "are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." *Id.* § 7.4002(b)(2). Safe and sound banking principles consider, among other things, "[t]he cost[s] incurred by the bank in providing [its] service[s]." *Id.* § 7.4002(b)(2)(i).

Making loans secured by liens on real property is a power granted to U.S. Bank by the National Bank Act. *See* 12 U.S.C. § 371(a); *Watters*, 550 U.S. at 7. In Tennessee, a holder of debt secured by real property must record a deed of release once the debt is paid in full or satisfied. Tenn. Code Ann. § 66-25-101(a). At a minimum, the fee for recording a release is $12. *Id.* § 8-21-1001(b)(3), (c) (2016). Failure to record a release subjects the debt holder to fines and penalties. *See id.* § 66-25-102.

Because U.S. Bank can only make loans secured by real property in Tennessee if it pays fees to record a deed of release upon repayment of each of such loans, those fees are a "cost incurred by the bank in providing [its lending] service." 12 C.F.R. § 7.4002(b)(2)(i). OCC regulations authorize national banks to charge fees based on such costs. *Id.* So U.S. Bank was authorized under federal law to charge Mr. Eudaley for the cost of recording the deed of release.

The United States Court of Appeals for the Sixth Circuit addressed the effect of charges and fees authorized by OCC regulations on state law limiting charges and fees in an analogous situation. In *Monroe Retail, Inc. v. RBS Citizens, N.A.*, the court held that OCC regulations authorizing banks to charge a service fee preempted a state-law conversion claim. 589 F.3d. at 284. There, Ohio law authorized a garnishment fee of $1. *Id.* at 277. But national banks would charge additional service fees for the garnishment process. *Id.* The garnishors then sued the banks, alleging, among other things, that the service fees violated Ohio law and amounted to conversion. *Id.* at 279. The banks

5

responded that OCC regulations preempted the garnishors' claims because the regulations authorized the banks to charge such fees. *Id.* at 280. The Sixth Circuit agreed with the banks. *Id.* at 283-84. It held that 12 C.F.R. § 7.4002(b), in authorizing banks to charge and collect service fees, authorized garnishment fees. *Id.* at 283-84. Because the Ohio law "significantly interfere[d]" with that authorization by imposing a limit on the fees the banks could charge, the garnishors' conversion claims were preempted. *Id.*

Applying these principles, we conclude that Mr. Eudaley's claims are preempted by federal law. Tennessee law prohibits a debt holder from seeking reimbursement of the fee for recording a deed of release. *See* Tenn. Code Ann. § 66-25-106. But OCC regulations authorize U.S. Bank to charge fees based on the cost of recording a deed of release. *See* 12 C.F.R. § 7.4002. So just like the state statute in *Monroe Retail*, Tennessee Code Annotated § 66-25-106 prohibits what federal law authorizes. Thus, the state statute prevents U.S. Bank from exercising its federally authorized powers.

## III.

Tennessee Code Annotated § 66-25-106 prohibits a debt holder from seeking reimbursement for costs associated with the recording of a deed of release. But that prohibition is preempted by federal law when the debt holder seeking reimbursement is a national bank. So we affirm the dismissal of Mr. Eudaley's claims.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

6