IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 11, 2024 Session

**IN RE HENRY W.H.**

**Appeal from the Juvenile Court for Shelby County**
**No. Z9507    W. Ray Glasgow, Special Judge**

———————————————————

**No. W2023-01234-COA-R9-JV**

———————————————————

After a hearing by a juvenile magistrate, Mother filed a timely petition for rehearing before the juvenile judge under Tennessee Code Annotated section 37-1-107(d). Over five hundred days later, section 37-1-107(d) was amended to eliminate the de novo hearing procedure and require a party seeking rehearing to file written exceptions to the magistrate's order. Father filed a motion to dismiss Mother's request for rehearing based on the amended statute. The juvenile court ruled that the amended statute would apply retroactively to Mother's request for rehearing but granted her additional time to comply with the amended procedure. In this interlocutory appeal, we reverse the decision of the trial court to apply the amendment to section 37-1-107(d) retroactively to this particular case and remand to the juvenile court for a de novo hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

Joseph W. Smith, Germantown, Tennessee, for the appellant, Charles H.H.

Lee Ann Pafford Dobson, Collierville, Tennessee; Zachary M. Moore and Madeline L. Nolan, Memphis, Tennessee, for the appellee, Amy C.W.

**OPINION**

**I.**

Charles H.H. ("Father") and Amy C.W. ("Mother") are the unmarried parents of

one minor child, Henry W.H., born in January 2013. In August 2015, Mother and Father entered into an agreed permanent parenting plan. While Mother has continuously resided in Memphis, Tennessee, Father has lived in different states. As a result, in January 2018, Father filed a petition with the Shelby County Juvenile Court ("the trial court" or "the juvenile court") to allow the child to fly as an unaccompanied minor for visitation purposes.[1]

The hearing on Father's petition was not heard until over three years later, on October 20, 2021, before a juvenile magistrate. At the hearing, the magistrate orally ruled that it would modify the parties' parenting plan. A written order granting Father's petition was entered on November 12, 2021. Therein, the magistrate noted that this case involved "multiple contempt petitions, petitions and amended petition and motions for relief and petitions to modify child support and motions for continuances; mediation attempts, two agreed parenting plans; psychological counseling; all consuming over a thousand pages of documents, motions, memorandum, exhibits and petitions, not to [mention] hours of court time." Based on the proof presented, the magistrate found that a material change in circumstances had occurred in that the parents were unable to jointly parent the child. In addition to other changes to the parties' parenting plan, the magistrate granted Father's request, such that the child would be permitted to fly to parenting time with each parent unaccompanied in any non-stop flight until the age of thirteen; after thirteen, the child would be allowed to fly in flights involving multiple stops unaccompanied.

On October 29, 2021, before the magistrate's written order was even entered, Mother filed a request for rehearing by the juvenile court judge pursuant to Tennessee Code Annotated section 37-1-107(d). At the time that Mother filed her request, the statute permitted a de novo hearing before the juvenile court judge. On November 17, 2021, the parties received notification that rehearing of the magistrate's order "has been filed and granted." A video hearing was set that same day.

But Mother's request for rehearing would not be resolved anytime soon. Eventually, Mother attempted to prevent enforcement of the magistrate's order, citing the child's alleged fear of flying. On April 12, 2023, the trial court issued an injunction preventing the child from flying for any of Father's parenting time pending further orders of the court. The child was permitted to visit Father for summer vacation by flying, but only if he was accompanied by Father. The trial court set the rehearing on Father's petition for June 5, 2023.

On April 25, 2023, however, an amendment to section 37-1-107(d) went into effect that eliminated the de novo hearing prescribed thereunder and provided more specific requirements for requesting rehearing before the juvenile court judge. Thus, in May 2023, Father moved to dismiss Mother's request for rehearing because it did not meet the

---

[1] Father also requested other relief, which apparently is no longer subject to much dispute.

requirements under the amendment.

The trial court ultimately concluded that the amendment to section 37-1-107(d) would be applied retroactively. The trial court ruled, however, that the prior injunction would not be dissolved and that the time for Mother to request rehearing under the amended statute would be enlarged under Rule 6.02 of the Tennessee Rules of Civil Procedure.[2]

Father thereafter timely requested permission from the trial court to seek an interlocutory appeal to this Court. Mother also requested that the juvenile court proceedings be stayed pending the resolution of the interlocutory appeal. The trial court granted both motions by order of August 22, 2023.[3] The trial court ruled that the following issues would be presented to this Court for review:

1. Does the language of Tenn. Code Ann. § 37-1-107 as amended require it to be applied retrospectively to requests for rehearings filed prior to April 25, 2023?

   If the language of Tenn. Code Ann. § 37-1-107 as amended is to be applied retrospectively, is there any retroactive application of the statute to orders entered after a request for rehearing has been filed and before April 25, 2023?

2. Does retrospective application of the statute and dismissal of a rehearing deny the aggrieved party an opportunity to file a Request for Review?

   If a Request for Review is available to a party who filed a request for rehearing prior to April 25, 2023, does the trial court have the authority to determine the date by which the Request for Review must be filed?

We subsequently granted Father's application for an interlocutory appeal on the issues certified by the trial court.[4]

## II.

In this case, the trial court ruled that while an amendment to section 37-1-107(d)

---

[2] A later order clarified that the juvenile court was allowing Mother additional time to comply with the amended rehearing procedure to prevent Mother "from suffering an unjust result."

[3] The trial court's stay had an exception: the injunction previously granted prohibiting enforcement of the October 20, 2021 order would be revisited. The trial court eventually entered an order on September 1, 2023, that modified the injunction and provided that the injunction would terminate on January 5, 2025, when the child turns twelve years old. The trial court further ruled that while "all matters contained in the record shall be reviewed[,]" the stay on proceedings otherwise remained in effect.

[4] Mother agreed that this Court should grant an interlocutory appeal of the trial court's ruling.

should be applied retroactively, Mother would be permitted an extension of time in which to comply with the amended statute so as to avoid "an unjust result." Each party takes issue with this ruling. Father argues that while the trial court was correct to apply the amendment retroactively, the trial court erred in extending the time for filing the newly required request for rehearing. In essence, Father asserts that the magistrate's order allowing the child to fly unaccompanied was not subject to rehearing before the juvenile judge, de novo or otherwise, under the amended statute. For her part, Mother asserts that the trial court should not have applied the amended version of section 37-1-107(d) retroactively.

The first question we must answer, therefore, is whether the trial court was correct to apply the amended version of section 37-1-107(d) retroactively. Whether the trial court erred in applying a statute retroactively is a question of law that we review de novo with no presumption of correctness. *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018).

At the time that Mother requested rehearing before the juvenile judge, section 37-1-107(d) stated, in relevant part, as follows: "Any party may, within ten (10) days after entry of the magistrate's order, file a request with the court for a de novo hearing by the judge of the juvenile court. The judge shall allow a hearing if a request for hearing is filed." Thus, a party to a juvenile action needed only to request rehearing within ten days of the magistrate's order to be entitled to a de novo hearing before the juvenile court judge.

On April 25, 2023, however, an amendment went into effect that significantly altered the rehearing procedure in juvenile court. Under the amended statute, a party seeking rehearing is still required to request rehearing within ten days of the magistrate's order, but the request "must include written exceptions to the magistrate's findings, conclusions, or recommendations, and specify the findings to which the party objects, the grounds for the objection, and the party's proposed findings, conclusions, or recommendations." Tenn. Code Ann. § 37-1-107(d)(1)(A). Moreover, the review by the juvenile judge "is not a hearing and is limited to those matters for which exceptions have been filed." Tenn. Code Ann. § 37-1-107(d)(1)(C). The juvenile court is also required to "afford the magistrate's findings, conclusions, and recommendations a presumption of correctness." Tenn. Code Ann. § 37-1-107(d)(1)(D). As a result, the juvenile judge is only permitted to "modify the magistrate's findings [] when, after review, the judge makes a written finding that an abuse of discretion exists in any or all of the magistrate's findings, conclusions, or recommendations." *Id.* And the juvenile court "shall issue written findings, conclusions, or recommendations, or may schedule the matter for a new hearing of any issues the judge deems necessary, with notice to all parties." Tenn. Code Ann. § 37-1-107(d)(1)(E); *see also* Tenn. Code Ann. § 37-1-107(d)(2) (allowing the juvenile judge to order a new hearing within ten days of the magistrate's order "on the judge's own initiative").

In this case, Mother filed her request for rehearing in October 2021, under the prior de novo hearing version of the statute. She did not delineate any specific errors in the

- 4 -

magistrate's order but simply requested a hearing. Five hundred forty-three days later, the amendment to section 37-1-107(d) went into effect, the result of which was to eliminate Mother's request for a de novo hearing. And if Father is correct, the amendment would also entirely prevent Mother from any rehearing because Mother failed to foresee an amendment to the juvenile magistrate statute that would eliminate that procedure over five hundred days later.

Generally, statutes are presumed to operate prospectively. **Kee v. Shelter Ins.**, 852 S.W.2d 226, 228 (Tenn.1993). An exception exists, however, "for statutes which are remedial or procedural in nature." **Id.** Remedial or procedural "statutes apply retrospectively, not only to causes of action arising before such acts become law, but also to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate application would produce an unjust result." **Id.** (citing **Saylors v. Riggsbee**, 544 S.W.2d 609, 610 (Tenn. 1976)).

In general, statutes governing how to appeal or seek review are procedural in nature. *See* **State Dep't of Hum. Servs. v. Defriece**, 937 S.W.2d 954, 958 (Tenn. Ct. App. 1996) (quoting **Nat'l Life & Accident Ins. Co. v. Atwood**, 194 S.W.2d 350, 353 (Tenn. Ct. App. 1946) ("As applied to procedural changes governing the right of appeal the rule is that, where due provision has been made for the preservation of essential rights, the procedure for review or the extent of review are so far within the power of the legislature as to preclude the raising of questions of due process with respect to the method or procedure for review, the parties entitled to review, or the character of review in the appellate court.")). The parties to this appeal do not dispute that section 37-1-107(d) is procedural.

But simply concluding that a statute is procedural does not end our inquiry:

> Finding that the amendment in question is procedural, however, does not automatically permit its retroactive application. Even a procedural enactment may not be applied retroactively in the following circumstances: where the legislature has manifested a contrary intention; where application of the new law would impair a vested right or contractual obligation; or where immediate application of the statute would produce an unjust result.

**Id.** at 958. In other words, "even a procedural or remedial statute may not be applied retrospectively if it impairs a vested right or contractual obligation in violation of Tennessee Constitution article I, section 20." **In re D.A.H.**, 142 S.W.3d 267, 273 (Tenn. 2004) (brackets and citation omitted); *see also* **Morris v. Gross**, 572 S.W.2d 902, 905 (Tenn. 1978) (holding that while "no one has a vested right in a particular remedy for the enforcement of a right of action and, thus, that the legislature ordinarily may change existing remedies for the enforcement of rights," "[i]t is equally clear, however, that principles of due process forbid the legislature to abolish a remedy that has been so far carried into operation that the substantive rights of the litigants would be adversely affected

if the remedy, as to them, were abolished"). In this case, Mother asserts that to apply the amendment to section 37-1-107 to this matter would impair a vested right and produce an unjust result. We begin with the question of whether application of the 2023 amendment would impair a vested right.

"A 'vested right,' although difficult to define with precision, is one 'which it is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice.'" ***Doe v. Sundquist***, 2 S.W.3d 919, 923 (Tenn. 1999) (quoting ***Morris***, 572 S.W.2d at 905). Father asserts that no vested right was impaired in this case, citing ***State Department of Human Services v. Defriece***. In ***Defriece***, three hearings were held on a petition to terminate a mother's parental rights. 937 S.W.2d at 956. After the first hearing, an amendment to Tennessee Code Annotated section 37-1-159(a) went into effect that removed a party's right to a de novo hearing before the circuit court in a termination of parental rights case and permitted only an appeal to this Court. ***Id.*** at 957. After two additional hearings in which the amended statute was effective, the trial court terminated the mother's parental rights. ***Id.***

On appeal to this Court, the mother asserted that she was entitled to a de novo appeal in circuit court under the prior version of the statute. ***Id.*** at 957. We concluded that the amendment to section 37-1-159 was procedural and should be applied even though the amendment went into effect while the case was pending. In particular, we held that the mother had no vested right in the particular remedy previously prescribed by section 37-1-159. ***Id.*** at 958–59. In reaching this conclusion, we specifically relied on ***In re S.M., Jr.***, which involved a similar change that occurred "eight months before the department petitioned to terminate the parents' parental rights and ten months before the trial in juvenile court." No. 01-A-01-9506-JV00233, 1996 WL 140410, at *5 (Tenn. Ct. App. Mar. 29, 1996). In ***In re S.M.***, we held that

> Applying the amended version of Tenn. Code Ann. § 37-1-159(a) to this case did not curtail the parents' appellate rights nor did it come at such an advanced stage of the proceeding that it undermined their substantive rights. The parents had ample notice of the procedural changes and of the increased importance of the juvenile proceeding. Since the amendment left intact the parents' right to appeal to this court, it did not unconstitutionally hinder their ability to present their case in the juvenile court or their ability to seek appellate review of the juvenile court's decision.

***Id.***

The ***Defriece*** court further held that applying the amended statute would not produce an unjust result, despite the mother's argument that she was unable to adequately preserve the record in preparation for an appeal to this Court rather than a de novo appeal. 937 S.W.2d at 959. We concluded that the mother failed to actually present evidence of

- 6 -

unfair prejudice in the form of affidavits or other evidence showing that she would have "conducted herself differently during the hearings had she anticipated a direct appeal to this court." *Id.* In particular, we noted that the mother was able to present a statement of evidence and that she did not employ a court reporter even for the second and third hearings, which were held after the effective date of the statute. *Id.* So we held that the mother "had sufficient notice of the change in appellate procedure, and of the increased significance of a hearing in juvenile court" to avoid an unjust result *Id.* (citing *In re S.M.*, 1996 WL 140410, at *5).

Respectfully, the procedural history of this case and the current state of the law on this issue lead us to reach the opposite conclusion here. In *Defriece*, the amended statute went into effect prior to the final two hearings on the petition to terminate parental rights. In *In re S.M.*, the amended statute went into effect even earlier, over nine months prior to the juvenile court hearing at issue. As such, in both of those cases, the appellants "had ample notice of the procedural changes" at a time when they could alter their conduct to take the changes into account. *In re S.M.*, 1996 WL 140410, at *5. The same is simply not true here, as the amendment to section 37-1-107(d) took effect five hundred twenty-eight days after the time for Mother to perfect her appeal had expired. The amendment at issue therefore came at "such an advanced stage of the proceeding that it undermined" Mother's ability to take corrective action in light of the amendment. *Id.*[5]

The state of the law on this issue has also changed since the decisions in *Defriece* and *In re S.M.* Specifically, in *Doe v. Sundquist*, the Tennessee Supreme Court adopted a multi-part test to determine whether a vested right was impaired. 2 S.W.3d at 924. Under this test, Tennessee courts consider the following as the "most important inquiries" in determining whether a vested right is impaired, with no single factor being dispositive: "(1) whether the public interest is advanced or retarded, (2) whether the retroactive provision gives effect to or defeats the bona fide intentions or reasonable expectations of affected persons, and (3) whether the statute surprises persons who have long relied on a contrary state of the law." *Id.* (quoting *Ficarra v. Dep't of Regul. Agencies*, 849 P.2d 6, 16 (Colo. 1993)).[6] The Tennessee Supreme Court has further stated that "[a]nother clearly important factor is whether application of the new law results in the loss of a fundamental right." *In re D.A.H.*, 142 S.W.3d at 274.

Father asserts in this case that the public interest is advanced by the amendment to

---

[5] Father asserts that the timing of the amendment means little, as this Court has held that procedural statutes should apply retroactively even if they went into effect after an appeal is perfected, citing *In re Brooklyn S.*, No. M2017-00390-COA-R3-JV, 2017 WL 5185459 (Tenn. Ct. App. Nov. 8, 2017). In that case, however, the amendment at issue merely provided that all parties to a juvenile court hearing would be parties to the de novo hearing. *Id.* at *9. As such, we held that no vested right was impaired. *Id.* The change in this case is far more significant, leading us to the opposite conclusion, *infra*.

[6] The *Doe* court explained that courts should also consider whether the statute is procedural or remedial, an inquiry we addressed *supra*.

section 37-1-107(d). We must agree. Although more clearly stated in abuse and neglect cases, it has long been the policy of this State to promote prompt resolution of juvenile matters. *Cf., e.g.*, **State Dep't of Children's Servs. v. F.R.G.**, No. E2006-01614-COA-R3-PT, 2007 WL 494996, at *12 (Tenn. Ct. App. Feb. 16, 2007) ("A prompt and expedited conclusion to termination proceedings is essential to the child's welfare."); Tenn. Code Ann. § 37-1-402(a) ("This part shall be administered and interpreted to provide the greatest possible protection as promptly as possible for children."). The 2023 amendment to section 37-1-107(d) promotes this policy.[7]

We further conclude that the 2023 amendment to section 37-1-107(7)(d) does not result in the loss of a fundamental right. While Mother certainly has a fundamental right to the care and custody of her child, **In re D.A.H.**, 142 S.W.3d at 274, she does not have a fundamental right to any particular procedure or remedy. **Morris**, 572 S.W.2d at 905.

The remaining two factors, however, strongly favor not applying the 2023 amendment in this case. *See* **Sundquist**, 2 S.W.3d at 924 (noting that these two factors "are obviously related to some degree"). Here, there can be no dispute that applying the 2023 amendment defeats the reasonable expectations of Mother. Here, when Mother participated in the October 2021 hearing, she reasonably anticipated that regardless of the outcome, she would be entitled to a de novo rehearing before the juvenile judge if she timely requested rehearing. Moreover, for over a year following her timely request for rehearing, both parties operated under the reasonable expectation that such a de novo rehearing would take place. It was only over five hundred days later that the law changed to deprive Mother of the hearing that she reasonably anticipated.

The fact that the amendment took effect five hundred twenty-eight days after Mother could have perfected her request for rehearing also clearly demonstrates the surprise in this case. Here, not only was the effective date of the statute well after Mother perfected her request for rehearing, the 2023 amendment to section 37-1-107(d) was not introduced until January 24, 2023. *See* S.B. 0400 (H.B. 1186), 113th General Assemb. (Tenn.2023), https://wapp.capitol.tn.gov/apps/Billinfo/default.aspx?BillNumber=HB1186&ga=113. As such, even if Mother had anticipated the passing of the proposed law,[8] the law was not even proposed until more than a year after the hearing before the magistrate and Mother's request for rehearing.

Thus, while some factors certainly favor retroactive application of the amendment to section 37-1-107(d) in this case, other factors strongly support the conclusion that Mother's vested right would be impaired by application of the amended procedure to this

---

[7] Respectfully, the proceedings in the juvenile court can in no way be described as complying with this policy, as a fairly routine request to alter a parenting plan is still not resolved nearly seven years later.

[8] We certainly do not expect litigants to scour the legislative records to find proposed laws that may affect their pending cases, in the event that they are passed. We simply cite this fact as evidence of the absurdity of expecting Mother to comply with the amended statute in this case.

case. Certainly, we understand the Tennessee General Assembly's purpose in altering the procedure in section 37-1-107(d). This case is illustrative of the problems created when juvenile matters are not resolved expeditiously. But Mother had no way to foresee the change in the law when she participated in the hearing before the magistrate or perfected her request for rehearing. And she labored for a significant period of time under the reasonable belief that the prior procedure would be applicable. We therefore conclude that, under the multi-factor test in *Sundquist*, it would impair a vested right to apply the amended version of section 37-1-107(d) under the specific and unique facts of this case. *See Sundquist*, 2 S.W.3d 919, 924 (noting that "there is no precise formula to apply in making this determination" as to whether a vested right was impaired); *see also Morris*, 572 S.W.2d at 905 (noting that due process forbids the legislature from abolishing a remedy that has long been relied upon such that substantive rights of litigants are affected).

Moreover, Father's own argument illustrates how unjust it would be to apply the newly enacted procedure to Mother's request for rehearing. *Defriece*, 937 S.W.2d at 958. As we perceive it, Father contends that after Mother failed to comply with the new procedural requirements of the amended statute within ten days of the magistrate's order, "a new hearing on the child flying issue was time-barred." And Father asserts that the trial court lacked subject matter jurisdiction to grant Mother additional time to comply with the procedural requirements after that ten-day window elapsed. Instead, Mother's only avenue for relief is an appeal to this Court of the final judgment of the juvenile court. So then, Father asserts not only that Mother is not entitled to the de novo hearing that she reasonably anticipated when she requested rehearing, but that Mother is entitled to *no* rehearing on the magistrate's decision because she failed to foresee and comply with a procedure that would not exist for another five hundred forty-three days. Respectfully, such a Kafkaesque result is both unjust and absurd. *Cf. Webster's New World College Dictionary* 792 (5th ed. 2014) (defining Kafkaesque as "characteristic of, or like the writings of Kafka; specif[ically], surreal, nightmarish, confusing complex, etc.").

Simply put, Tennessee law should not be applied in a manner that forces litigants to consult a psychic in order to determine the proper procedure to follow. As our high court explained, parties "cannot be expected to anticipate and will not be charged with notice that the legislative branch of government will attempt to interfere in such proceedings and effect a dismissal thereof." *Morris*, 572 S.W.2d at 907. While Father asserts that Mother still has a right to appeal to this Court of any final order eventually entered in the juvenile court case, the Tennessee General Assembly has clearly provided that parties are entitled, one way or another, to the rehearing of matters decided by juvenile magistrates. Father's interpretation totally deprives Mother of this right. As a result, while the 2023 amendment to section 37-1-107(d) is procedural, it nonetheless cannot be applied in this particular case because it impairs Mother's vested right as defined by the *Sundquist* court and the result would be unjust.[9] This matter is therefore remanded to the juvenile court for a de novo

---

[9] Father also raises additional arguments that were not designated as issues by either the trial court

rehearing on Father's petition to alter the parties' parenting plan. Father's argument that the trial court erred in allowing Mother an enlargement of time to comply with the amended statute is therefore pretermitted.[10]

### III.

The judgment of the Shelby County Juvenile Court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Charles H.H., for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

or this Court, including that it was error for the juvenile court to enter the injunction against the magistrate's ruling allowing the child to fly unaccompanied, given the retroactivity of the amended statute, and a request for attorney's fees incurred on appeal as the prevailing party. Generally, "[w]hen dealing with an interlocutory appeal, the Court can and will deal only with those matters clearly embraced within the question certified to it." *Tenn. Dep't of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975). In any event, our decision herein pretermits Father's argument that the trial court erred in granting Mother the temporary injunction. Moreover, Father's request for attorney's fees is denied because he did not prevail in this appeal.

[10] Obviously, the de novo nature of this hearing will allow the parties to present evidence concerning the child's present circumstances.